EDWARD B. MEARS et al. *vs.* JULIA BIDDLE.

Hancock.    Opinion March 30, 1923.

*A real estate broker who procures for the owner a customer, willing, ready and able to purchase and pay for the property the stipulated price on the terms defined by the owner, is entitled to his commission. A cash sale whether expressly stated or implied requires payment in cash on delivery of deed, but terms may be waived by the owner, and such waiver is a question of fact. A refusal to give a requested instruction is not exceptional error where the subject matter of the requested instruction has already been given though in different language, as the interest of the excepting party was not thereby prejudiced.*

A broker having real estate for sale who is the procuring cause of bringing a customer upon the scene not only willing but prepared to purchase and pay for the property at the price and on the terms defined by the owner, and who otherwise has fully and properly done his part, is entitled to his commission.

A cash sale is a sale conditioned on payment concurrent with the delivery of the deed as distinguished from sale where by agreement payment is deferred. A cash sale, whether expressly defined or necessarily imported, may be waived by the seller; waiver being a question of fact.

A requested instruction had already been defined in other words of like meaning.
  Therefore refusal to give it was not hurtful.

On defendant's exceptions and motion for a new trial.   An action
by plaintiffs, real estate brokers, to recover of defendant commission
for procuring for defendant a customer to purchase of defendant
certain real estate in Bar Harbor, the property having been placed
by the defendant in the hands of plaintiffs for that purpose.   The
contention of the defendant was that the plaintiffs had not complied
with all the terms and stipulations defined by her in placing the
property in their hands for sale.   The case was tried to a jury and a
verdict for plaintiff for $1314 was rendered.   Defendant excepted to a
refusal to give a requested instruction and also filed a general motion
for a new trial.   Exception overruled.   Motion overruled.

The case is fully stated in the opinion.

*Charles H. Wood,* for plaintiffs.

*Harry L. Crabtree,* for defendant.

SITTING:  CORNISH, C. J., PHILBROOK, DUNN, MORRILL, DEASY, JJ.

DUNN, J.   Owning real estate in Bar Harbor which she was wishing
to sell, the defendant listed it with the plaintiffs, brokers and agents
doing business there, in the hope that they would find a purchaser on
prescribed terms, their pay to be in the form of a commission con-
tingent on success.   This was previous to the year of 1917.

Toward the end of August, in 1917, as the defendant was leaving
Bar Harbor, she and one of the plaintiffs talked over the situation in
reference to the property, the other plaintiff averring a knowledge
of that fact.   At the trial there was a sharp conflict in the testimonies
of the parties regarding the tenor of this conversation, the plaintiffs
saying that the defendant orally authorized them to offer the prop-
erty for thirty thousand dollars, and the defendant as positively
insisting that, notwithstanding the plaintiffs' importuning, she
adhered to the higher selling price before then named, only modifying
her attitude by assenting that she might be notified if the brokers
received a thirty thousand dollar bid.

Three years passed by.   The property still was on the plaintiffs'
listings.   One August day, a prospective purchaser of the name of
Baker, of unquestionable readiness, ability, and willingness to buy

the estate, appeared at the plaintiffs' office and proposed that he would buy for thirty thousand dollars.   Evidently the proposal was otherwise unqualified.   Plaintiffs telegraphed the defendant:

"Mr. Baker will pay your price, thirty thousand,—one thousand on signing contract nine thousand thirty days thereafter twenty thousand January two."

A reply telegram told that a letter was following.   The first sentence of the letter was in these words:

"The price which Mr. Baker offers is I think too low for the present time."

Beyond this, and the asking of what would be a fair rental for the house and land through the next year, the letter argues its initial statement.

The plaintiffs wrote:

"You will recall that when you were here in 1917, you told us that you would sell your property for $30,000.   .   .   .   ."

The defendant rejoined:

"An offer of $30,000 in 1917 is not what it is in 1920 & I think it would be a mistake to accept such a price now."

Said the plaintiffs:

"We have your letter   .   .   .   and assume it is a definite refusal of Mr. Baker's offer, and we are so notifying him.   He will not pay more.   .   .   .   ."

And the defendant answered that she felt that thirty-five thousand dollars was the lowest sum that she could take for the property "now."

Mrs Biddle accepted the offer of Mr. Baker, or a renewal of that offer, after a little while, and made a conveyance of the realty to him, the plaintiffs not participating in the transaction.   On learning what Mrs. Biddle had done, the plaintiffs brought this action against her asserting that, having produced a customer who was not only willing but prepared to purchase and pay for the property at the price and on the terms which had been given to them as brokers, they were reasonably entitled to their commission. *Smith* v. *Lawrence*, 98 Maine, 92; *Grant* v. *Dalton*, 120 Maine, 350; *Jutras* v. *Boisvert*, 121 Maine, 32.

The presenting questions on review are, whether the verdict which the plaintiffs have for their full demand ought to be avoided on a usual form motion, and whether the trial judge erred in declining an instruction reading:   "If the defendant agreed to sell her property

through the offices of the plaintiffs for cash, but the offer as submitted to defendant by plaintiffs provided for payment in terms other than cash, the plaintiffs cannot recover." Responding in inverse order. As plain and as difficult of demonstration as a self-evident proposition is it, that the requested instruction but embodied an abstract principle of law applicable to a fact assumed as true. Were nothing more appearing, it would be clear that the reserved exception had merit, but the essential difficulty with the defendant's position is, that the refusal to give the instruction was not hurtful, and this for the reason that the governing rule had been defined in other words of like meaning, as these excerpts from the charge show:

"Now there is an arrangement, . . . between the brokers . . . and the party who owns the property . . . , as to the terms upon which it shall be sold, whether for cash or on time, . . . . Now you understand that I have already stated that the agents or brokers who have property in their hands for sale, must sell that property precisely according to the contract between them and the seller of the property, that is, if it is cash, that sale must be cash.

"They must meet the exact terms upon which the property is put in their hands for sale."

Of course, if tautology may have the indulgence of pardon, harmless refusal works no injury. Sufficient instructions upon the point involved were laid down. More need not be said. *Hearn* v. *Shaw*, 72 Maine, 187; *Young* v. *Insurance Company*, 80 Maine, 244; *Bunker* v. *Gouldsboro*, 81 Maine, 188.

The motion too must be decided adversely, though for a reason unlike that ascribed for overruling the exception, and the ground is, that the facts which were in controversy have been decided in the only mode provided by our constitution and laws for deciding questions of fact, namely, by the verdict of a jury, a method which is the best yet devised by man's wit for the purpose. Courts may set aside verdicts, but the power is restricted in exercise to instances, not where intelligent, fair-minded and conscientious men might reasonably differ (*Pollard* v. *Maine Central Railroad*, 87 Maine, 51), but when palpable and gross error, produced by prejudice, bias, or mistake of law or fact, is shown on the record. *Sawyer* v. *Hopkins*, 22 Maine, 268; *Hatch* v. *Dutch*, 113 Maine, 405; *Lemieux* v. *Heath*, 116 Maine, 55. And, be it remembered, that the credibility of every witness and the weight of his testimony is for the jury. *Hatch* v. *Dutch*, supra.

A listing of the property at a stipulated price, nothing being said as to terms, contemplated that the consideration for the transfer should be paid in circulating cash or money.  *Grant* v. *Dalton,* supra; *Jutras* v. *Boisvert,* supra.  A cash sale is a sale conditioned on payment concurrent with delivery of the deed as distinguished from a sale where by agreement payment is deferred.  Now, a cash sale, whether expressly defined or necessarily imported, may be waived by the seller; waiver being a question of fact:

These litigants differed, in the first place, respecting the listing of 1917.  Plaintiffs declared the price was fixed at that time at thirty thousand dollars.  The defendant witnessed that thirty-five thousand dollars continued to be the value which she set, though she consented to take thought of a thirty thousand dollar offer, if made.  On this issue the plaintiffs' version was accepted.

A thirty thousand dollar offer was made. · It was a cash offer.  The maker bore witness that it was.  The plaintiffs likewise attested.  For some purpose, not seen in the text, they did not so submit it to their principal.  In what manner, it is pertinent to inquire, did the receipt of the plaintiffs' telegram, telling the defendant that Mr. Baker would pay her price and stating its amount and the terms, cause her to react?  Observe again the succinct replying expression, and notice its clarity and internal evidence:  "The price which Mr. Baker offers is I think too low for the present time."

Any mention of an authority previously revoked?  Any suggestion that thirty thousand dollars never had been the established price?  Any complaint or rejection because of postponement in payment?  No.  On the contrary, the letter supports the plaintiffs' insistence.  Tacitly admitting that thirty thousand dollars was named as the amount for which they might sell, the writer indicated the variation in the worth of that sum then and at "the present time," implying that a dollar's buying power had diminished in the three years which lay between.

· The defendant first advanced on the trial that the prospective purchaser was not solicited as she had directed, or, to put it in another way, that, within her privilege, she elected not to accept and ratify any modified terms.  The question was for the jury.  Respecting it, and the other matters which were in dispute, the members of the panel that tried this case saw the witnesses, they heard them testify, and they observed them while they were testifying.  They considered

all the evidence, weighed its value, and based their verdict, not upon certainty, but upon that part of the evidence which they in their sphere found to be of the greater weight.   They decided, without needlessly seeking how slight or how great the plaintiffs' services and exertions had been, that the plaintiffs were the procuring cause of bringing a customer upon the scene, and that they had fully and properly done their part.   So the jury deemed the brokers worthy their commission.   And, in the circumstances, the commission was computed rightly at the fixed customary rate in the community. *Potts* v. *Aechternacht*, 93 Pa. St., 138.   A verdict arrived at in a fair manner, with propriety, and sensibly is final.

*Exception overruled.*
*Motion overruled.*