[Civil No. 4709.   Filed June 19, 1945.]

[159 Pac. (2d) 792.]

MINNIE POMEROY, a Widow, Appellant, v. JOHN R. HOGLE and SARAH MELISSA HOGLE, His Wife, Appellees.

92

Messrs. Struckmeyer & Struckmeyer and Mr. Claude
E. Spriggs, for Appellant.

Mr. Milton L. Ollerton, for Appellees.

LaPRADE, J.—The appellees Hogle and wife filed
an action in the lower court to quiet the title in them
to two certain lots in the Town of Mesa City, Arizona.
Among the named defendants were Minnie Pomeroy
and Maricopa County, Arizona. The county answered
through its board of supervisors. Plaintiffs in their
complaint alleged that the lots in question had come
into the ownership of the state by virtue of a tax sale,
and that the board of supervisors had thereafter ad-
vertised said property for sale at private sale. They
alleged further that they submitted a bid of $1,800 cash.
With reference to this offer, the complaint contains
the following allegations:

"It was further agreed by and between said Board
of Supervisors and the plaintiffs, on or about March
1st, 1943, that said Board would place with the Arizona
Title Guarantee and Trust Company a deed executed
by said Board conveying title to said property to the
plaintiffs with instructions to said title company to
deliver said deed to the plaintiffs upon their paying
to said title company the sum of $1800.00 on or before
ninety days from March 1st, 1943, $200.00 of said pur-
chase price to be paid to the title company at that time.

"That such a deed was placed with the Arizona Title Guarantee and Trust Company by said Board and the plaintiffs paid the sum of $200.00 with the understanding that if he failed to pay the balance of the purchase price on or before June 1st, 1943, said sum of $200.00 would be forfeited to Maricopa County."

The evidence discloses that the appellees did not tender any cash with their written offer of $1800, or at the time of the pretended acceptance. At or about the time the offer was made, appellees made an application to the Western Savings and Loan Association for a loan with which to purchase the property. After the offer had been received by the board of supervisors, an agent of the loan association called on the board of supervisors and informed it that his company was going to make the loan; and that before the company would advance the money it would be necessary for the Hogles to institute a quiet title action. He suggested that the supervisors execute a deed and place it in escrow with the Arizona Title Guarantee and Trust Company. Following this suggestion, the supervisors adopted the following resolution:

"Lot Sale Escrow Authorized

"Following consideration, and in accordance with the provisions of Sec. 73–839, A. C. A. 1939, motion was made and unanimously carried accepting the offer of John R. Hogle to purchase Tract 'B', South ½ of Lots 5 and 6, Block 29 Mesa, for $1800.00. The Chairman and Clerk were authorized to execute a deed thereof and place same in escrow for delivery upon purchaser's successful suit to quiet title and payment of full purchase price."

On February 27, 1943, the supervisors wrote the title company the following letter:

"Gentlemen:

"I attach herewith, State of Arizona deed, issued for the State of Arizona to John R. and Sara Melissa Hogle of Mesa, Arizona, covering S½ of Lots 5 and 6, Block 29, Tract B.

"You are authorized to deliver same to the grantees upon collection for the account of Maricopa County of $1800.00. All charges are to be paid by the grantees and the right is reserved by the Board of Supervisors to cancel this authority and recall the deed unless the transaction is completed by June 1st, 1943. You are also to require a deposit of $200.00 from Mr. Hogle, which amount is to be forfeited if the title is found satisfactory and he does not thereupon pay the entire amount and take delivery of the deed."

At the same time, the board wrote Mr. Hogle a letter, advising him of the contents of its letter to the title company, which letter contained the following paragraph:

"We are reserving the right to cancel the transaction and recall the deed unless everything is completed by June 1, 1943."

On April 23rd, the supervisors adopted the following resolution:

"Authority for Sale of Lot

"In accordance with an opinion of the County Attorney as to the handling of the State Tax Deeds through escrow, it was declared to be the policy of the Board that cash offers to purchase have priority over conditional proposals. Under this policy the Chairman and Clerk were authorized to execute and deliver a deed to the S½ of Lots 5 and 6, Block 29, Tract 'B', Mesa, *upon payment therefor by anyone of an amount not less than $1800.00.*" (Italics supplied.)

The next day the supervisors wrote a letter to the title company directing its attention to the board's first letter (above quoted) of instructions with reference to the escrow. This letter contained the following paragraph:

"Under a ruling recently furnished by the County Attorney, the Board of Supervisors will be obligated to accept a cash payment and deliver a deed to the property described providing it is an acceptable

amount. Should this happen, the provisions in my letter of February 27th will necessarily be cancelled, at any time before the proposed June 1st limitation.''

The board promptly advised the appellees of this last resolution and its new letter of instructions to the title company. On April 26, 1943, the appellant Minnie Pomeroy, relying upon the last resolution passed by the board that it would sell the lots ''upon the payment therefor by anyone of an amount not less than $1800,'' submitted an offer to the board of the sum of $1,805, and tendered said sum in cash. This offer has never been acted upon by the board. The next day, the appellee Hogle paid into the title company the sum of $1,600 and demanded the deed which had theretofore been placed in escrow. The title company refused to deliver the deed by reason of the instructions that it had last received from the board of supervisors.

The testimony of the plaintiff Hogle was equivocal and contradictory. He testified that his offer to buy was not contingent upon getting the loan and that he was ready, able, and willing to pay the $1,800 cash at the time he made his original offer. He then testified as follows:

''A. Well, I did have the money, yes, sure I had the money to pay them, but I was getting the money through the Building and Loan because I could get it over a long period of time and use the money that I got from my salary to improve the property. It needed improving badly.

''Q. So you made an application for a loan to the Western Building & Loan?  A. That is right. That is right.

''Q. And they wouldn't make the loan until the title was clear, would they?  A. That is right.

''Q. And who authorized Mr. Ollerton bring the action to quiet the title? Who employed him?  A. Well, I did. The Western Building and Loan recommended Mr. Ollerton to me to do that.

"Q. Yes. And then you went and employed him to bring the action to quiet title? A. That is right.

"Q. And up until the 27th day of April the only payment you had made on the property was the $200 paid to the Arizona Title Guarantee and Trust Company? A. That is right.

"Q. And you had a letter from the Board of Supervisors notifying you that the escrow was placed there and that if the title was cleared and you didn't complete the purchase by June the 1st you would forfeit that $200, and you accepted those terms and went on waiting for the title to be cleared? That is right is it? A. Yes."

The defendant Minnie Pomeroy answered plaintiff's complaint alleging that the pretended purchase and sale to the Hogles was void for the reason that the supervisors had and have no authority to sell real estate in any other manner except for cash; that the contract of sale to the Hogles was conditioned upon the quieting of title to the land; and that the Hogles, as purchasers, under their contract were privileged to decline to go through with the purchase upon forfeiting the $200 theretofore deposited. The prayer of her answer was for an order and judgment directing the board to issue and deliver to her a deed to the property.

At the conclusion of the trial the court ordered judgment for the plaintiffs, quieting title in them, and ordered the board of supervisors to authorize and direct the title company to deliver the deed to the plaintiffs, and to accept from the title company the $1,800.

From this judgment, Minnie Pomeroy has appealed to the court, assigning as error (1) that the appellees' bid of $1,800 was not the highest bid; (2) that the offer was conditional and not a cash bid as required by Section 73-839, Arizona Code Annotated 1939; and (3) that the attempted sale was contrary to law. In support of these assignments, appellant submits the following propositions of law:

1. Property sold by the State of Arizona, as authorized by statute, must be made to the highest bidder for cash.

2. Escrow or conditional sale of real property by the State of Arizona is not authorized by law.

3. Agreements made contrary to law are void *ab initio*.

The assignments and propositions of law raise but one point, which is: Was the purported sale as made authorized by law?

Our Legislature has prescribed the manner in which land acquired by the State of Arizona through a tax sale may be sold. The applicable Section is 73–839, Arizona Code Annotated 1939, which reads as follows:

"The board of supervisors may, after such advertisement, sell such real estate to the highest bidder for cash, and upon such sale shall execute and deliver to the purchaser, at his cost, a deed conveying to him the title of the state in and to the tract so purchased. The deed shall be acknowledged by the chairman and clerk of the board. The purchase money shall be paid to the county treasurer, who shall distribute and credit the same to the several funds entitled thereto. Should any such real estate be not sold before the time for the next succeeding publication thereof, the board may omit the same therefrom."

This court has heretofore had occasion to construe this section in the case of *Ray* v. *Frye,* 58 Ariz. 340, 119 Pac. (2d) 941, 943. In this case, we used the following language:

"We do not think plaintiff a bidder in conformity with Section 73–829. While he offers $9,000 for the lots, he reserves the right to object to any of the taxes laid against them. He then states that the offer is 'in compromise and settlement of taxes,' etc. This is not an offer to purchase the lots, as is with no come back; it is a conditional offer. . . . "

In the instant case, the board, in compliance with law, had advertised to sell these lots to the highest

bidder for cash. As we pointed out in the Ray v. Frye case, the board is not compelled to sell the property to any bidder nor is it obligated to sell to the first highest bidder. It is the duty of the board to hold the sale open until it has received a fair and reasonable bid. If and when a sale is made, it must be to the highest bidder for cash, and cash only. In the Frye case, we quoted approvingly from the case of *Dazet* v. *Landry,* 21 Nev. 291, 30 Pac. 1064, that "A sale for cash is a sale for the money in hand." Plaintiff below did not accompany his offer with cash, or tender it at the time of the purported acceptance. He testified that he was ready and willing at all times to pay cash and would have if it had been requested. Nevertheless, he acquiesced in and ratified the actions of the agent for the loan company in requesting that the deed be placed in escrow in order that a quiet title action might be instituted by him so that he could assure the loan company that he had a merchantable title. The substance of his final offer and the agreement reached was that he would buy the property for $1,800; that he would pay down $200, which he would forfeit to the board of supervisors in the event he was not successful on or before a fixed date in securing by litigation a title that would be acceptable to the loan company to which he had made application for, and expected to secure, a loan with which to complete the purchase price. As we pointed out in the Ray v. Frye case, an offer to purchase lots from the state must be "as is with no come back" and for cash. "A cash sale is a sale conditioned on payment concurrent with delivery of the deed as distinguished from a sale where by agreement payment is deferred. . . . " *Mears et al.* v. *Biddle,* 122 Me. 392, 120 Atl. 181, 182. For further definitions of cash sale, see *Philadelphia & R. R. Co.* v. *Lehigh Coal Navigation Co.,* 36 Pa. 204, 210, 12 Casey 204, 210; *Weyerhaeuser Timber Co.* v. *First Nat. Bank,* 150 Or. 172, 38 Pac. (2d) 48, 43 Pac. (2d) 1078; *Ber-*

*laiwsky* v. *Rosenthal,* 104 Me. 62, 71 Atl. 69. If a prospective purchaser is suspicious of or entertains any doubts as to the sufficiency or the merchantability of the title of the state in land it proposes to sell, then good business sense would seem to dictate that he not buy it. Our Legislature wisely provided that sale of real estate belonging to the state should be for cash and to the highest bidder. By these two conditions, the Legislature intended to prevent the disposition of property acquired as in this case for an unfair price, and the extension of credit to those who might directly or indirectly be in a position to profit by a purchase at an unfair price or upon credit or upon option in order that they might speculate.

We will now revert to the demand of the defendant Minnie Pomeroy for an order directing the board of supervisors to deliver a deed to her upon the ground that she was the highest bidder for cash. In this behalf, it will be noted that the resolution adopted by the board of supervisors on April 23rd authorized the sale of these lots "upon payment therefor by anyone of an amount not less than $1800." Patently, this resolution does not comply with the provisions of Section 73–839, *supra.* As above pointed out, the board was compelled to sell this property to the highest bidder for cash. The legal effect of this resolution, if any, was to state a reserve bid, and indicated that the board would not accept a bid less than $1,800. The board had no authority to state that it would deed the lots to anyone that would pay some sum in excess of $1,800. If the board had this power, it could fix an unfair purchase price and the first person "in the know" could complete the purchase by paying a nominal sum over and above the amount fixed. Such a sale would not be a sale to the highest bidder for cash. The statute authorizing a sale to the highest bidder for cash was adopted to prevent any finagling in the disposition of lands acquired by the state through tax sales to the

detriment of the state and to the advantage of others. The record discloses that the board of supervisors has not acted upon the offer of Minnie Pomeroy. It has not yet sold to anyone who has qualified as the highest bidder for cash with an equal opportunity to bid.

The allegations of the complaint disclose that plaintiffs had no cause of action, and defendant's motion to dismiss should have been granted. For the foregoing reasons, the judgment of the lower court is reversed with directions to dismiss plaintiff's complaint and defendant's answer and cross-complaint.

STANFORD, C. J., and MORGAN, J., concur.