KOMAN *v.* HOLTGREVE ET AL.

[No. 130, October Term, 1954.]

*Decided April 18, 1955.*

The cause was argued before BRUNE, C. J., and DELA-
PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Hyman A. Pressman* for the appellant.

*I. Sewell Lamdin,* with whom was *Harry M. Miller*
on the brief, for Emanuel Erlich and Joseph Kashkett.

Submitted on brief by *Howard Calvert Bregel* and
*Calvert Ross Bregel* for Clarence E. Holtgreve and Her-
man W. Holtgreve.

HAMMOND, J., delivered the opinion of the Court.

The appellant, Max Koman, and two of the appellees,
Herman W. and Clarence E. Holtgreve, entered into a
contract of sale on April 15, 1954, whereby the appellant
agreed to purchase and those appellees agreed to sell a
property and the grocery and meat business which had
long been conducted therein. The selling price was
$30,000.00 and $3,000.00 was paid as a deposit.

In the contract of sale the sellers warranted that the
weekly receipts from business during the week begin-
ning April 19 and ending April 26, would be not less
than $2,500.00, of which not more than $500.00 would be
on credit. The contract provided that if these conditions
were not met, the buyer, at his option, could call off the
sale and reclaim the $3,000.00 deposit. At the conclusion
of the test week, the buyer claimed that the cash sales
for the period had been under $2,000.00 and demanded
the return of the deposit. When it was not forthcoming,
he sued the sellers and the real estate broker, who had
received, and was holding, the deposit, for the amount
thereof. The court, sitting without a jury, found for
the defendants and the appeal is from the judgment in
their favor.

It is agreed that the sales for the test week totalled
$2,608.81 and that of this amount $487.25 represented
groceries and meat which had been sold during the week
and had not been paid for at its close. $1,821.56 repre-
sented sales in which the price had been paid at the

time of purchase and $300.00 represented the price of supplies which had been sold during the week but paid for, in whole or in part, later in the week. The appellant contends that the $300.00 received and rung up on the cash register during the week, for sales made earlier in that week, were payments for sales on credit which, added to the sum of $487.25, the agreed credit sales, made total sales on credit of $787.25 and cash sales of but $1,821.56, which was below the guaranteed figure. Appellees, on the other hand, argue that the $300.00 received during the week for sales made earlier during the week were cash sales and that, therefore, the total cash sales were $2,121.56.

The literal meaning of the term cash sales and its general legal meaning do not differ significantly. A cash sale ordinarily is one where delivery and payment are to be concurrent acts, which are to be performed at the same instant of time. *Foley v. Mason*, 6 Md. 37; *Lawder & Sons Co. v. Mackie Grocery Company*, 97 Md. 1, 13; *Hall v. Richardson*, 16 Md. 396, 411; *Anglo-American Provision Co. v. Prentiss* (Ill.), 42 N. E. 157, 160; and 2 *Williston Sales*, Rev. Ed., Secs. 341, 342, 343. The provision in the warranty that total weekly receipts shall not be less than $2,500.00, of which not more than $500.00 shall be "on credit", necessarily means that at least $2,000.00 shall represent cash sales. The appellant must prevail unless custom or usage were proven to show that the terms were used with a different and controlling meaning, or unless other provisions of the contract itself bring about a different meaning. The trial court, in its opinion, said that the contract had to be construed "with reference to the type of business involved, and with reference to the knowledge of the business by the respective parties." If we assume, without deciding, that usage and custom, properly proven, sufficiently general and known to the parties, could alter the apparent meaning of the contract, we find nothing in the evidence to show any custom or usage of the grocery business as to cash sales and credit sales, or that the knowledge of the

parties was other than that seemingly represented by the language they used in the contract they executed. This being so, the unambiguous contract must be read as written. *Lawder & Sons Co. v. Mackie Grocery Company*, cited above; and *Globe Home Improvement Co. v. Brothers*, 204 Md. 73.

The provisions of the contract itself support the theory of the appellant and refute that of the appellees. Paragraph 7 provides: "From the signing of this agreement to the day of settlement the Sellers and Purchasers shall take charge of the store and all sales shall be for the benefit of the Purchasers, the Sellers, however, to keep the money and give the Purchasers at the end of each day a memorandum showing the sales both cash and on credit made for the day. All merchandise purchased after the signing of this agreement shall be paid from the daily cash receipts. At the time of settlement, the Sellers shall credit against the purchase price cash received from sales less money paid for purchase." The provision that at the end of each day a memorandum showing "the sales both cash and on credit" would seem to have little, if any, meaning if credit sales were not to include those for which cash was not received at the time of purchase. The appellees suggest that the contract was a printed form and that great significance should not be attributed to the language of paragraph 7. It is to be noted that paragraph 5 of the contract was stricken out as inapplicable to the circumstances of the sale here involved, and this would support the inference, if one were needed, that all that remained in the printed contract was pertinent and significant. The appellees urge further that the actual bookkeeping during the test week did not comply with the terms of paragraph 7 and that the records which were seen by the appellant who was in the store during the test week showed only cash sales and amounts paid out for purchases of the business. They deduce from this that the appellant was familiar with this type of bookkeeping and "that he sanctioned it in that he did not raise any objection to the

procedure." Whatever force this argument could have in fact is lost when it is considered that the records, as kept, did show the sales on credit. Those which it was expected would be paid off during the week were noted on a paper which hung near the cash register, and those which might be paid off during the week, or later, were entered in books seen by the appellant, there being a book for each customer or family. It is not controlling that the appellees regarded this system as reflecting the meaning of the contract as they understood it. The appellant, on the Sunday morning which followed the closing of the test week Saturday night, immediately made known that, in his understanding of the contract, the warranty had not been lived up to. Where there has been integration of an agreement by an unambiguous writing, those who executed it will not be allowed to place their own interpretation on what it means or was intended to mean. "The test in such case is objective and not subjective." *Ray v. Eurice,* 201 Md. 115, 127.

We think that the language of the contract, read as a whole, clearly shows that any purchases as to which delivery and payment were not concurrent, were on credit. 2 *Williston Sales,* above cited. Under this interpretation of the contract, the appellees fail to meet the warranty and the appellant is entitled to the return of his $3,000.00 deposit.

> *Judgment reversed with costs, and judgment entered for the appellant against the appellees for three thousand dollars, and costs below.*