**FIRST FEDERAL SAVINGS & LOAN AS-SOCIATION et al., Appellants**

v.

**Tom H. SHARP, Appellee.**

No. 15836.

Court of Civil Appeals of Texas.

Dallas.

May 5, 1961.

Rehearing Denied June 2, 1961.

J. P. Rice and Herbert Marshall, Dallas, for appellants.

T. L. Hamilton, Dallas, and LeRoy LaSalle, Carthage, for appellee.

WILLIAMS, Justice.

Suit in trial court was by Tom H. Sharp, as plaintiff, against First Federal Savings and Loan Association of Dallas, Texas, and Joel T. Williams, Jr., A. D. Gwynne and B. Odell Jones, individually and as trustees under a deed of trust, as defendants. Plaintiff's first count for recovery was in trespass to try title. In his second count he sought to set aside and vacate a deed of trust sale of the property involved and, in the alternative, he sought to have the trial court find that he was the successful bidder at the deed of trust sale and that the trustees should be ordered to execute and deliver to him appropriate trustee's deed. He also sought to recover rents and revenues of the property involved. Defendants pled the statutory denial to the trespass to try title cause, and, in answer to the second count, denied that the trustee's sale should be voided because plaintiff had failed to produce cash in payment of his bid and hence such bid was not sufficient under the terms of the deed of trust. Trial was had to a court and jury. The court submitted the case to the jury on two special issues the effect of which was to inquire whether plaintiff, or his agent and attorney, were ready, able and willing, within a reasonable time, to produce in cash the amount of the bid for the property involved. Based upon favorable answers of the jury to these questions a judgment was rendered in favor of the plaintiff, Tom H. Sharp, against the First Federal Savings and Loan Association of Dallas, decreeing that the trustee's deed executed by the trustees in favor of First Federal Savings and Loan Association of Dallas be cancelled and set aside; that the trustees be ordered to execute and deliver to plaintiff a trustee's deed to the property involved for a consideration of $5,000 (such sum having been deposited in the registry of the court by plaintiff); and further decreeing a money judgment in favor of plaintiff against First Federal Savings and Loan Association of Dallas for the rents and revenues of the property. Recovery

was denied against the individual defendants, Joel T. Williams, Jr., A. D. Gwynne and B. Odell Jones either as trustees or in their individual capacity. From this judgment First Federal Savings and Loan Association of Dallas appeals.

Appellant assails the judgment of the trial court in five points. In essence appellant's first four points, grouped together, are that the trial court erred in (1) refusing to grant appellant's motion for instructed verdict both at the conclusion of plaintiff's testimony and at the conclusion of all the testimony; (2) in failing. to grant appellant's motion for judgment non obstante veredicto; and (3) in failing to grant a new trial, because appellee's bid at the deed of trust sale was not a cash bid and therefore, as a matter of law, appellee was not entitled to purchase the property in question.

The evidence material to a consideration of these points is rather clear and undisputed. On August 17, 1955 D. R. McCorvey and wife, executed a deed of trust to Joel T. Williams, Jr., B. Odell Jones and A. D. Gwynne, as trustees for First Federal Savings and Loan Association of Dallas to secure the payment of a certain note described in the deed of trust. Said instrument contained the usual provision that in default of payment the trustees would proceed to sell the mortgaged property at public vendue to the highest bidder for cash at the courthouse door in the County between the hours of 10 a. m. and 4 p. m. on the first Tuesday of any month after giving notice of the time and place and terms of sale. Default occurred and notice of sale was duly and regularly posted providing that on Tuesday the 7th day of January, 1958, between 10 a. m. and 4 p. m. the trustee would sell said real estate at the door of the courthouse of Dallas County, Texas "to the highest bidder for cash". Prior to the time of the trustee's sale on January 7th, 1958, and on the same day, Tom H. Sharp, appellee, had purchased the equity in the

property owned by McCorvey at a Sheriff's execution sale, and thereby became the mortgagor by virtue of such purchase. There is evidence by Sharp that he attempted to pay off the amount of the unpaid mortgage to appellant prior to the trustee's sale but was unable to locate the proper parties to receive such payment. The amount of the unpaid balance on the mortgage was $4,527.50. The three named trustees proceeded to the door of the courthouse in Dallas County to conduct the sale under the terms of the deed of trust. One of the trustees, Joel T. Williams, Jr., in an affidavit previously made by him and admitted by him to be true on the trial, said that the trustee sale was held at 3:15 p. m. Another trustee, Odell Jones testified that the sale was had between 3:30 and 4, or about 3:45 p. m. Odell Jones proceeded to read the notice of sale and then asked for bids. Mr. Williams, one of the trustees and also an officer of the First Federal Savings and Loan Association, bid $4,527.50 on behalf of the Association. T. L. Hamilton, attorney and agent for appellee Sharp, then said "I bid $5,000", Jones asked Hamilton if he had the cash, whereupon Hamilton replied "No" but stated that he would give a check. Jones then told Hamilton that he would not accept a check in payment and said that he would not accept anything other than cash. Hamilton then stated to Jones he had the cash in a lock box in the Texas Bank & Trust Company which is located 3 blocks from the courthouse. Hamilton offered to go to the Bank and return with the cash within a few minutes time. Jones told him that he would not delay the sale and would not wait for him to go to the Bank and procure the cash. Jones admitted that Hamilton told him that it would only take a few minutes to produce the cash but that he refused to wait or to give him any time to comply with his demand for cash. Jones admitted that the trustee's deed was not then prepared and that he did not recall exactly when it was prepared. Jones did not recall whether it was prepared that day or the

next day. At any rate, Hamilton being refused the time to go to the Bank and bring the money, then stated to Jones that his client, Sharp, would be at the courthouse before 4 p. m. with the cash money. Jones ignored this request for delay and proceeded to sell the property to the First Federal Savings and Loan Association of Dallas for the amount of $4,527.50. The trustee's deed of Jones is dated January 7, 1958, and was admittedly drawn up sometime after 4 p. m. on that date. Proof was introduced to show that Hamilton had sufficient funds on deposit with the Texas Bank & Trust Company to cover the payment of his check. It was undisputed that Hamilton had the money in cash in his deposit box in the Texas Bank & Trust Company located 3 blocks from the courthouse. The jury found that either Hamilton or Sharp would have produced the cash within a reasonable time which was defined to mean "such time under all of the circumstances a man of reasonable prudence and diligence would have needed to perform the act contemplated". No contention is made that the jury's answers to these issues was not supported by the evidence.

A single question is thus presented by appellant's points: Where the terms of a deed of trust direct the trustee to sell the property for cash is it necessary for a bona fide bidder to then and there present to the trustee the amount of his bid in legal tender prior to the execution and delivery of the trustee's deed?

■■ Appellant contends, and we agree, that a trustee has no power to sell except those expressly granted in the deed of trust under which the sale is made, and that those powers must be strictly construed. 29 Tex.Jur. § 137, p. 975; 42 Tex.Jur. § 104, p. 718; Ryan v. Porter, 61 Tex. 106; Kendrick v. White, Tex.Civ.App., 254 S.W. 2d 168 (writ ref.); Texas Osage Co-Operative Royalty Pool, Inc. v. Crighton, Tex.Civ.App., 188 S.W.2d 230 (err. ref.); Faine v. Wilson, Tex.Civ.App., 192 S.W.2d 456. The sale by virtue of the power is

"equivalent to a strict foreclosure by a court of equity", 29 Tex.Jur. § 129, p. 963; Minchew v. Hankins, Tex.Civ.App., 278 S.W. 306, 309, affirmed Tex.Com.App., 285 S.W. 264.

Even so, the trustee obligated to perform such power must not lose sight of the fact that he does not act for one party but for both. The trustee in the deed of trust becomes a special agent for both parties, and he must act with absolute impartiality and with fairness to all concerned. We must equate the word "trustee" with fairness, impartiality, and a maximum effort to achieve the object of the trust. 29 Tex.Jur. § 30, p. 825; Hampshire v. Greeves, 104 Tex. 620, 143 S.W. 147; Zeiss v. First State Bank, Tex.Civ.App., 189 S.W. 524 (err. ref.). Manifestly, a trustee is required and expected to perform his duties in a business-like manner with a view of obtaining as large a price as he reasonably can. There must be, of a necessity, some reasonable discretion and judgment to be exercised for the accomplishment of the maximum benefit of his power. The trustee must zealously guard the powers delegated to him because of the very nature of his dual responsibility. In Reisenberg v. Hankins, Tex.Civ.App., 258 S.W. 904, 910, the court said: "Because sales by mortages under powers are much liable to abuse, they are more jealously watched by courts of equity, and upon slight proof of unfair conduct they will be set aside."

Appellant strenuously contends that because Hamilton did not immediately, then and there, produce legal tender in the sum of $5,000 to pay for his admitted highest bid for the property then offered for sale, that the trustee was justified in refusing such high bid, and to proceed to sell the property to the mortagee for the lesser amount. Appellant cites many cases in support of the proposition that cash is required for the consummation of a sale but none are cited and we have been unable to find any, holding that it is essential that the bidder produce cash before consummation of the transaction or delivery of deed.

It is our opinion that the rights of the successful bidder at a trustee's sale are not prejudiced by the fact that he has not immediately tendered the amount of his bid in legal tender. 29 Tex.Jur. § 146, p. 991; Clearman v. Graham, Tex.Civ.App., 4 S.W.2d 581, 583, err. dis. Tex.Com.App., 14 S.W.2d 819, on rehearing, Tex.Com.App., 16 S.W.2d 522. In the Clearman case, supra, bidder's attorney made the highest bid and the trustee declared the land sold to him. Trustee's deed was prepared immediately after the bid but bidder's attorney had left town. Trustee resold the property the same day without notice to bidder or his attorney. Upon the following day bidder's attorney demanded of the trustee a deed and offered to make a tender of his bid. The trustee refused to make a deed or accept payment of the amount of the bid. The court set aside the sale made by the trustee and held that the bid made by the attorney was in good faith and that he should have been allowed a reasonable time under the circumstances in which to comply with such bid.

A sale of land contemplates payment upon delivery of evidence of title. It would be unreasonable to contend that a purchaser, acting in good faith, an absent fraud or misrepresentation, would be required to turn over to an unknown trustee, unbonded, large sums of cash without receiving a deed representing the title to the property purchased. A "cash sale" is a sale concurrent with delivery of the deed as distinguished from a sale where by agreement payment is deferred. Mears v. Biddle, 122 Me. 392, 120 A. 181, 182. In common ordinary popular acceptance of the language, a direction to sell for cash is a clear and unqualified direction not to sell or pass title to the goods without cash in hand. A sale for cash means that the money shall be paid when the title to the property passes. Hall v. Storrs, 7 Wis.

253, 259. A "cash sale" is a sale conditioned on payment concurrent with delivery and not a sale on credit. Weyerhaeuser Timber Co. v. First Nat. Bank, 150 Or. 172, 38 P.2d 48, 43 P.2d 1078, 1081; Ellis v. Nelson, 68 Nev. 410, 233 P.2d 1072; Winter v. Miller, 10 Cir., 183 F.2d 151; Hecketsweiler v. Parrett, 185 Or. 46, 200 P.2d 971; Succession of McCausland, La.App., 13 So.2d 508; Wilson v. Commercial Finance Co., 239 N.C. 349, 79 S.E.2d 908; Commercial Standard Ins. Co. v. McCollum, 10 Cir., 207 F.2d 768; Koman v. Holtgreve, 207 Md. 85, 113 A.2d 419; In re Union Central Life Insurance Co., 208 La. 253, 23 So.2d 63 and Pomeroy v. Hogle, 63 Ariz. 91, 159 P.2d 792.

In 59 C.J.S. Mortgages § 576, p. 972 the rule is announced: "It is not necessary that there be a strict and literal compliance with the requirements of sale for cash; so, a delay of a few days in closing a transaction and paying over the money will not be regarded as extending credit."

In the light of these authorities, and the undisputed facts in this record, appellant's position is untenable and must be overruled. Appellant's first four points are overruled.

■ Appellant's fifth, and last point, complains of the action of the trial court in refusing to give the jury its special requested issues inquiring as to whether the trustee did anything to prevent appellee from having the cash available to pay for his bid at the time of the sale. In oral argument appellant's counsel admitted that there was no evidence in the record to raise the issue that appellant did anything to prevent appellee from having the cash available. The issue requested was not an ultimate fact issue essential for the disposition of this case in view of our holding. The inquiry was immaterial and therefore the trial court did not err in refusing to give such issue as requested. Appellant's fifth point is overruled.

The judgment of the trial court is affirmed.