Paul USERY et al., Appellants,

v.

Robert E. LACY, Appellee.

No. 15953.

Court of Civil Appeals of Texas.

Dallas.

Oct. 6, 1961.

Rehearing Denied Nov. 10, 1961.

Harrington & Harrington, Longview, for appellants.

Witts, Geary, Hamilton, Brice & Lewis and Jim K. Choate, Dallas, for appellee.

DIXON, Chief Justice.

This is an appeal from an order granting a temporary injunction restraining appellants from proceeding with a sale of property under execution.

Appellant H. M. Harrington, Jr. is the holder and owner by transfer and assignment from Collis P. Irby, of a judgment against appellee Robert E. Lacy, on which judgment there is a balance due in the principal sum of $28,587.40 plus interest at 10% since 1952, making a total amount due in excess of $50,000. Appellants Paul Usery and J. M. Blalock are Sheriff and Deputy Sheriff respectively of Wood County, Texas.

A writ of execution was placed in the hands of the officers, levy was made on certain oil and gas properties alleged to belong to Lacy in Wood County, and a Sheriff's sale was advertised for February 7, 1961. However, on February 6, 1961, the day before the sale was to be held, the court issued its ex parte restraining order, and on February 16, 1961 the court, after a hearing, issued its temporary injunction order, under the terms of which appellants were "enjoined from foreclosing or attempting to foreclose upon the real property or interest therein of Robert E. Lacy situated in Wood County, Texas, until this cause is finally determined, * * *". It is from the above order of February 16, 1961 that this appeal has been taken.

Some of the persons, properties and transactions involved in this suit and appeal were involved also in an earlier suit and appeal in which Lacy was the losing litigant. See Lacy v. Carson Manor Hotel, Tex.Civ. App., 297 S.W.2d 367, writ ref. n. r. e.

On December 22, 1952, Texas Bank & Trust Company of Dallas was granted judg-

ment against Robert E. Lacy and his wife Earlene G. Lacy and against Collis P. Irby and Carson Manor Hotel, a corporation, for $44,713.60 principal, with interest at the rate of 10% on $40,648.72 of said judgment and interest at the rate of 6% on $4,064.88 of said judgment from date of judgment. The judgment also awarded foreclosure on three parcels of property, two of which were owned by Lacy and one by Collis P. Irby and Carson Manor Hotel, of which Irby was the principal stockholder.

Parcels Nos. 1 and 2, belonging to Lacy, consisted mainly of properties constituting Pleasure Pier located at Port Arthur, Texas. Pleasure Pier is a pleasure resort consisting of a roller coaster, miniature train and track, merry-go-round, ferris wheel, shooting gallery, swimming pool, etc. Included also is a leasehold interest in the real estate on which Pleasure Pier is located.

Parcel No. 3 in which Collis P. Irby and Carson Manor Hotel held interests, is a promissory note in the principal sum of $79,000 payable to Carson Manor Hotel, secured by a lien on real estate and by a chattel mortgage on personal property.

The Bank's suit and judgment were based on a note and mortgage, on which note Robert E. Lacy and wife were the principal makers and Collis P. Irby and Carson Manor Hotel were merely accommodation makers for the benefit of Lacy and wife. The court awarded judgment and foreclosure in favor of the Bank against all defendants and in favor of Collis P. Irby and Carson Manor Hotel over against Lacy for any sums of money which they or either of them might be required to pay to the Bank in satisfaction of the judgment.

The judgment recited that by reason of the position of Collis P. Irby and Carson Manor Hotel as accommodation makers, and their plea for marshalling of assets, Irby and Carson Manor Hotel were entitled to have the security of Robert E. Lacy and wife sold first, said security being parcels Nos. 1 and 2 of the property foreclosed on;

and parcel No. 3, the security owned by Irby and Carson Manor Hotel, sold only in the event the proceeds of the sale of the parcels Nos. 1 and 2 were insufficient to pay off the judgment.

Some time after the above judgment was rendered an order of sale was issued in favor of Texas Bank & Trust Company and placed in the hands of the Sheriff of Jefferson County, Texas, for execution. On or about April 16, 1953 parcels Nos. 1 and 2 were sold pursuant to the order of sale, and were bid in at the Sheriff's sale by Collis P. Irby, individually, for the sum of $15,626.20, which amount was duly credited on the judgment held by Texas Bank & Trust Company. Following this sale and the crediting of the proceeds thereof there was still due and unpaid on the judgment as of April 16, 1952 the approximate sum of $29,097.40.

To protect himself Collis P. Irby, whose credit was good at the Bank, negotiated a loan at the Texas Bank & Trust Company of about $51,300. This was a loan to Irby individually. It was out of the money obtained through this loan that Irby paid the $15,626.20 to the Sheriff for the purchase at the Sheriff's sale of parcels Nos. 1 and 2, the Pleasure Pier.

But there was still a balance of about $30,000 due the Bank on the judgment of December 22, 1952, and according to Irby's testimony the Bank was about to cause a second order of sale to issue directing the sale of parcel No. 3, the property belonging to Irby and Carson Manor Hotel, the accommodation makers on Lacy's note. Irby therefore paid the Bank the amount of the balance due on the judgment, approximately $30,451, in return for which the Bank sold, transferred and assigned to Irby the remainder of the judgment against Lacy. This sum was also paid to the Bank by Irby out of the $51,300 which Irby individually had borrowed earlier from the Bank.

The situation of Irby, originally an accommodation maker on Lacy's note, at this point in the proceedings was as follows:

at the Sheriff's sale, he had purchased and had become the owner of parcels Nos. 1 and 2, the Pleasure Pier for $15,626.20. Then he had averted foreclosure on his interest in parcel No. 3 by purchasing from the Bank for 100 cents on the dollar the judgment against Lacy, that is the balance due against Lacy after crediting the $15,160.20. But to do this Irby had obligated himself personally and individually on his own note to the Bank for $51,300.

Irby is not a party to this suit and by the time of the hearing at which the temporary injunction was granted he had sold and transferred his judgment against Lacy to appellant H. M. Harrington, Jr. But he was a witness at the hearing.

Irby testified that after he purchased the Pleasure Pier on April 16, 1953 at the Sheriff's sale he "had to go down and rehabilitate the place completely, * * * nothing had been done to the place and a place like that goes down awfully quick, particularly down on the coast where everything absorbs the atmosphere. It depreciates and deteriorates."

Irby further testified that after he had rehabilitated Pleasure Pier he negotiated a sale of the property to a group of Port Arthur business men. Concerning this sale of the property Irby testified: "It took me quite a while to negotiate the sale, and I stayed down there and worked on it awfully hard, worked day and night trying to sell it, rehabilitating it, and it really ran into a proposition." Irby did not remember how long it was after he purchased Pleasure Pier at the Sheriff's sale that he sold it to the group of Port Arthur business men. However, Max Rosenfield, the attorney who represented Irby in both the purchase and sale of the property, testified that the sale to the Port Arthur business men took place two or three months after its acquisition by Irby at the Sheriff's sale.

We have dwelt somewhat at length on the part of the transactions here involved because it is undisputed that Irby sold Pleasure Pier for enough money to pay off his $51,300 loan at the Bank, thus clearing his skirts of all liability incurred by him and his corporation, Carson Manor Hotel, as accommodation endorsers on Lacy's note to the Bank, while leaving Lacy still liable for payment of the balance due on the judgments.

Thereafter for several years nothing further happened with reference to the Bank judgment against Lacy, which judgment was now owned by Irby. However Irby had recorded the judgment in counties other than Jefferson County and in December 1960 the sum of $500 was paid to Irby to clear title to a certain piece of property in which Lacy was interested. By 1960 the amount owed by Lacy on the judgment including interest, had amounted to more than $50,000.

On December 15, 1960 Irby sold, transferred and assigned to H. M. Harrington, Jr. all his interest in the judgment against Lacy. This transfer and assignment was without recourse on Irby. Soon thereafter Harrington caused an execution to issue and a levy was made on oil and gas properties in Wood County valued by Lacy at more than $2,000,000 in which Lacy claims an interest. It was to restrain sale under execution of Lacy's interest in this property that the court issued the temporary injunction which is the subject of this appeal.

The above property is at present the subject of another suit in which Lacy as plaintiff has brought a trespass to try title suit against numerous defendants, one of whom is H. M. Harrington, Jr.

### Opinion

In his first, second, fourth and fifth points on appeal appellant H. M. Harrington, Jr. contends that (1) Lacy's sworn petition is wholly insufficient to support the temporary injunction entered; (2) the trial court erred in admitting testimony dealing with prior executions and orders of sale, since these issues are not within the sworn pleadings of appellee Lacy; (4) where judgment debtor Lacy (a) did not attack the final

judgment against him, (b) did not seek to vacate or set it aside, (c) did not allege lack of jurisdiction over his person, (d) did not allege lack of jurisdiction of the court that entered the judgment against him, (e) did not allege error in rendition of the judgment, (f) did not allege that procurement of the judgment was by fraud, accident or mistake and (g) had not appealed therefrom, his request for injunction of execution sale thereunder was merely another means of obtaining an extension of delay in payment, and the trial court erred in granting him a temporary injunction against sale; and (5) where judgment debtor Lacy did not tender payment of balance owed on the judgment, he was not in court with clean hands and was not offering to do equity; so the trial court erred in granting him a temporary injunction against sale of property under execution.

In our opinion appellant's first, second, fourth and fifth points on appeal are well taken and must be sustained.

Art. 4646, Vernon's Ann.Civ.St. expressly provides that no injunction to stay an execution upon any valid and subsisting judgment shall be granted after the expiration of one year from the rendition of such judgment, unless it be made to appear that an application for such injunction had been delayed in consequence of the fraud or false promises of the plaintiff in the judgment, practiced or made at the time, or after rendition of such judgment or unless for some equitable matter or defense arising after the rendition of the judgment.

Nowhere in Lacy's petition does he allege that any fraud was practiced on him when the judgment was entered. The judgment itself recites that "defendants Robert E. Lacy and wife, Earlene Lacy, in open court advised the court that they had no defense to the cause of action of plaintiff or the cross-action of the defendants Collis P. Irby and Carson Manor Hotel, a corporation".

In his petition Lacy admits that the judgment against him is valid and subsisting. We quote from Lacy's petition for injunction: "* * * under the terms of such judgment, there was due and payable to the plaintiff Texas Bank & Trust Company of Dallas, principal, interest and attorney's fees in the amount of $44,713.60, and such proceeds of the Sheriff's sale, $15,626.20 were applied thereon, leaving an unpaid balance of $29,087.40. Thereafter defendant Collis P. Irby paid Texas Bank & Trust Company of Dallas the sum of $30,-451.98, *and on April 17, 1953 plaintiff Texas Bank & Trust Company of Dallas for and in consideration of the said sum paid to it by Collis P. Irby sold, assigned and transferred unto the said Collis P. Irby the remainder of the hereinafter described judgment and the unpaid balance thereof against the said Robert E. Lacy. That on December 7, 1960 there was paid to Collis P. Irby the sum of $500.00, leaving a balance due thereon of $28,578.40, together with interest thereon.*" (Emphasis ours.)

We quote further from Lacy's petition for injunction: "Plaintiff alleges that unless said sale be restrained and enjoined for at least 90 days he will suffer irreparable injury and damage, * * *. Plaintiff believes and alleges that if granted sufficient reasonable time in which to do so he can pay the amount justly due and owing upon said judgment."

Notwithstanding the above allegations and admissions appellee Lacy did not in his pleadings or his testimony tender or offer to tender payment of the amount he admits is justly due and owing on the judgment, nor did he name any day certain in the future when he would make payment. Lacy's petition was filed February 6, 1961. The 90 days time he requested for payment has long since expired.

In our opinion the grounds upon which Lacy relies offer no proper equitable basis for staying execution of a judgment nearly eight years old, which Lacy admits is a valid and subsisting judgment, but concerning which he makes no tender of payment of the balance due. See Urbanec v. Jezik, Tex.Civ.App., 138 S.W.2d 1098; Re-

frigeration Discount Corp., v. Meador, Tex. Civ.App., 134 S.W.2d 329; Miller v. Burnet Mercantile Co., Tex.Civ.App., 65 S.W. 2d 505; Southern Sales Co. v. Parker, Tex. Civ.App., 54 S.W.2d 217; Texas Central Railroad Co. v. Hoffman, Tex.Civ.App., 193 S.W. 1140; Ripps v. Hermann, Tex.Civ. App., 163 S.W. 1023; Bullitt v. Jesse French Piano & Organ Co., Tex.Civ.App., 158 S.W. 782; Anderson v. Oldham, 82 Tex. 228, 18 S.W. 557; and Art. 4646 V.A.C.S. Appellant's first, second, fourth and fifth points are sustained.

In his third point on appeal appellant objects to the admission of certain testimony of Collis P. Irby.

Irby was asked by appellee's counsel whether at the time he bought Pleasure Pier at the Sheriff's sale in 1953 he had any agreement with other parties to later purchase the property; whether he actually resold the property; and where he got the money to pay off the balance due on the judgment to the Bank. Appellant's objections to these questions were at first sustained, but after hearing Irby testify in making out appellee's bill of exceptions, the court reversed his decision and admitted the testimony.

Irby testified in effect that after he bought Pleasure Pier he spent a great deal of time at Port Arthur, Texas, rehabilitating the property which was in a run-down condition; that thereafter he sold the property to a group of business men in Port Arthur for enough to pay off a $51,300 note at the Bank; and that he had used the money so borrowed at the Bank to purchase Pleasure Pier at the Sheriff's sale in 1953 and to pay the Bank the balance due on the judgment as consideration for the transfer of the judgment by the Bank to Irby.

■ We think the testimony was inadmissible in view of the pleadings and testimony of Lacy himself. As we have already pointed out Lacy does not attack the validity of the judgment. On the contrary he admits that as of December 1960 he owed more

than $28,000 on the principal amount alone, not including interest. He does not charge Texas Bank & Trust Company or Irby with fraud in procuring the judgment or in transferring the judgment to Irby.

There is testimony that the Bank after obtaining judgment in September 1952 agreed to wait until March 1953 before causing an order of sale to issue, the delay being for the purpose of giving Lacy a chance to make arrangements to pay off the judgment. But Lacy did not do so.

■ Irby's testimony is that he had to rehabilitate Pleasure Pier before selling it and that he sold it thereafter to a group of business men. Max Rosenfield testified that the sale to the group of business men took place two or three months after Irby acquired the property at the Sheriff's sale. Certainly Irby had a right, as accommodation maker on Lacy's note, to protect himself from the judgment against him incurred as a result of his signing Lacy's note. That he had credit at the Bank and that he succeeded in selling Pleasure Pier for enough to work his way out of his financial difficulty, cannot now be raised by Lacy as a defense against the judgment as to Lacy. The Bank had a right to transfer the judgment against Lacy to Irby; and Irby had a right to transfer the judgment to appellant Harrington. It is not shown that Harrington, present owner of the judgment, was a party to previous transactions between the Bank, Irby and Lacy, or even that Harrington knew anything about the prior transactions. Appellant's third point is sustained.

In his sixth, seventh and eighth points on appeal appellant complains of the court's holding that execution sale against Lacy should be enjoined because of an alleged equitable title, or resulting trust, held by John Erhard in the Wood County property on which levy was made by Harrington.

In his pleadings Lacy makes no mention of John Erhard or any equitable title Erhard may have to the property in question. Erhard is not a party to this injunction suit, nor is he a party so far as the record shows

in the trespass to try title suit filed by Lacy in Wood County.

The only reference to John Erhard, or any equitable title is to be found in Lacy's testimony. We quote relevant parts of his testimony:

"Q. Are those tracts and oil and gas leases which you claim you own, the subject of a lawsuit now pending * *? A. Yes * * *.

"Q. You paid the Bank four hundred and fifty-three dollars for that lease, did you not? * * * A. No, sir, I did not * * * I didn't pay the Bank anything.

"Q. Well, your attorney up in Dallas, Mr. Erhard actually issued the check for the four hundred and fifty-three dollars? A. Yes, it belongs to Mr. Erhard * * * its in my name * * *I have an interest.

"Q. You do have an interest? A. Yes * * *

"Q. What about the owners that you obtained the leases from, other than Quitman Bank? A. Raymond Fannin, of a one hundred twenty acre tract, he owned 57.57 undivided interest * * I took that as a lease.

"Q. What is your present percentage interest in the leasehold estate covering the one hundred ninety-two acres? A. I believe it is in excess of one half, a little bit in excess of one half, about 51. something percent.

"Q. And your attorney, Mr. Erhard, owns the other? A. Mr. Erhard owns the whole thing. I will get an interest in it when it is all settled. Mr. Erhard has paid for all of it.

"Q. But as far as the whole status is concerned, as far as your title rights are concerned, you have at least a one half interest in those leasehold estates? A. Yes, one half or better." (Emphasis ours.)

· [4] · From Lacy's pleadings and from his testimony as above set out it is inescapable that Lacy claims an interest in the Wood County properties. Whatever the interest of Erhard may be, his interest is not being adjudicated in this suit, for he is not a party, nor is he a party, so far as the record shows, in the Wood County suit in the trespass to try title filed by Lacy. His rights, whatever they may be, should not be allowed to interfere with Harrington's execution of his judgment against Lacy and Lacy's interest. We believe our holding in this regard is supported by these authorities: Lozano v. Guerra, Tex.Civ.App., 140 S.W. 2d 587; Rose v. Wylie, Tex.Civ.App., 95 S.W.2d 523; J. M. Radford Grocery Co. v. Owens, Tex.Civ.App., 161 S.W. 911; McCall Co. v. Page, Tex.Civ.App., 155 S.W. 655; Hahn v. P. J. Willis & Bro., 31 Tex. Civ.App., 643, 73 S.W. 1084; Modisette v. National Bank, 23 Tex.Civ.App. 589, 56 S. W. 1007; Corder v. Steiner, Tex.Civ.App., 54 S.W. 277; and Purinton v. Davis, 66 Tex. 455, 1 S.W. 343. Appellant's sixth, seventh and eighth points are sustained.

In his ninth point appellant says that the trial court erred in giving any effect to the fact that when Collis P. Irby bid in the Pleasure Pier properties at the execution sale in 1953 for $15,626.20, he did not actually pay the money until some time later.

The court in its order granting the temporary injunction found that the money was paid "at some uncertain date to the Sheriff".

■ Again we must sustain appellant's point. It is undisputed that the money was actually paid by Irby to the Sheriff. It is undisputed that Lacy was given the benefit of the sale by a credit in his favor on the judgment. Max Rosenfield, who was then acting as Irby's attorney, testified that he believed the money was paid to the Sheriff a day or two after the sale. Certainly Lacy is not entitled to hold up further execution on the judgment because the money was not paid to the Sheriff on the sale of Pleasure Pier until a few days after the sale. First Federal· Savings & Loan

Ass'n v. Sharp, Tex.Civ.App., 347 S.W.2d 337; Cameron v. Saathoff, Tex.Civ.App., 342 S.W.2d 470; Warman v. Wurzbach, Tex.Civ.App., 51 S.W.2d 751.

Moreover, Lacy's attempted collateral attack on the validity of the 1953 execution coming as it does eight years after the sale, cannot be considered in this suit. Appellant's ninth point is sustained.

Appellant's tenth point is to the effect that the trial court erred in fixing the temporary injunction bond in an insufficient amount and in releasing the ex parte restraining order bondsmen from all possible liability.

The trial court fixed the temporary injunction bond at the sum of $28,000. The judgment against Lacy including principal and interest due, amounted at that time to more than $50,000. It is obvious that the amount of the bond did not meet the requirements of Rule 684, Texas Rules of Civil Procedure, which states that the amount of the bond should be fixed in the amount of the judgment plus a reasonable amount to cover interest and costs.

The trial court also "released and discharged" the sureties on the $7,500 ex parte restraining order bond. We know of no grounds on which these sureties were entitled to be released and discharged. It was the restraining order, issued only one day before the execution sale was to be held, which actually prevented the holding of the sale. In our opinion neither the ex parte restraining order, nor the temporary injunction should have been issued. Appellant's tenth point is sustained.

In his first counterpoint Lacy contends that the execution in question did not conform to the judgment as it was not issued in the manner and upon the specific properties as directed by the judgment. There is no merit to this contention.

Irby and Carson Manor Hotel, being only accommodation endorsers on Lacy's note, requested the court to provide that execution of the order of sale in favor of the Bank should take place, first against the Pleasure Pier properties owned by Lacy, and second, against parcel No. 3, the property owned by Irby and Carson Manor Hotel, only in the event Pleasure Pier did not bring enough money at the Sheriff's sale to pay off the entire judgment in favor of the Bank. The judgment so provided.

This provision was placed in the judgment for the benefit of Irby and Carson Manor Hotel at their request as accommodation signers on Lacy's note. It was not for the benefit of Lacy, the principal maker. Yet Lacy complains that execution was never levied on parcel No. 3 owned by Irby and Carson Manor Hotel, the accommodation makers. The reason no levy was made on parcel No. 3 was that Irby paid the Bank the full amount due on the judgment in consideration of the sale and transfer of the judgment to Irby. It would be absurd to hold that an accommodation maker on a note after judgment cannot protect himself by proceeding against other property owned by the principal maker until he has foreclosed on his own property. Appellee's first counterpoint is overruled.

Appellee Lacy in his brief argues that it would be unequitable to allow appellant Harrington to foreclose a judgment for which he paid only $2,500 against properties worth $2,000,000. Appellee's argument is unsound. According to his own testimony only $473 was paid by Lacy for properties which he says are worth $2,000,000. And this small sum was not actually paid by Lacy himself but was paid for him, according to Lacy, by John Erhard. Lacy is in no position to point the finger of accusation at Harrington, because Harrington paid only $2,500 for an eight year old judgment.

The judgment of the trial court is reversed and judgment is here rendered (1) setting aside the order releasing and dis-

charging the sureties on the restraining order bond, and (2) denying a temporary injunction enjoining H. M. Harrington, Jr., Paul Usury and J. M. Blalock from foreclosing or attempting to foreclose by execution upon the interest of Robert E. Lacy in the real property situated in Wood County, Texas.