**Elizabeth CURRY, formerly known as Elizabeth Lacy, Plaintiff,**

v.

**UNITED STATES of America, SMALL BUSINESS ADMINISTRATION, and Andrew Graves, an individual, Defendants.**

No. C–86–4903 WHO.

United States District Court, N.D. California.

June 18, 1987.

Gene Cain, Walnut Creek, Cal., for plaintiff.

Joseph Russoniello, Judith Whetstine, Asst. U.S. Atty., San Francisco, Cal., for defendants.

## OPINION AND ORDER

ORRICK, District Judge.

■ This case, by cross-motions for summary judgment, presents the question whether a federal agency, here, the United States Small Business Administration (the "SBA"), which makes loans in California evidenced by promissory notes secured by deeds of trust containing powers of sale, may exercise the power of sale if the statute of limitations has run against it on the promissory note. This Court holds that it can for the reasons hereinafter stated and, accordingly, grants the lender's (defendant SBA) motion for summary judgment and denies the borrower's (plaintiff Curry) motion for summary judgment.

### I

Curry applied for and received a loan for $21,000 from the SBA in July 1970 in order to make improvements on her home that would enable her to operate a day care center on the premises. In consideration for the loan, Curry executed a promissory note on July 13, 1970, in favor of the SBA that provided for monthly installment payments of $186, with the balance due fifteen years from the date of the note. Declaration of Idamari Taylor in Support of Defendants' Motion for Summary Judgment (hereinafter "Taylor Declaration"), Exhibit A, filed Dec. 15, 1986. As security for the loan, Curry conveyed a deed of trust on her house and property to Title Insurance and Trust Company, as trustee for the SBA, on July 13, 1970. Taylor Declaration, Exhibit B.

■ Curry paid the installments on the loan until mid–1974, when she began to encounter fiscal difficulties with the day care center. From 1974 until 1977, Curry and the SBA engaged in various discussions with the intent of agreeing upon a suitable repayment plan that would cover

the delinquent payments, as well as the balance of the loan principal and interest. *See* Taylor Declaration, Exhibits E & F. In a declaration submitted in support of her motion for a temporary restraining order filed with the Alameda County Superior Court in August 1986, Curry makes much of her claim that an officer of the SBA told her that the SBA would "charge off," or forgive, her loan. She states: "In July 1974, I was advised by SMALL BUSINESS ADMINISTRATION officer R.N. Read that my loan would be transferred to the inactive files, would be charged off and removed from their loan records. Mr. Read directed me to contact the SMALL BUSINESS ADMINISTRATION in 10 years to have deed of trust reconveyed." Declaration of Elizabeth Curry in Support of Motion for an Order to Show Cause and for a Temporary Restraining Order (hereinafter "Curry Declaration"), filed Aug. 19, 1986. The declaration does not commence to meet the strict requirements of Federal Rule of Civil Procedure 56(e) that the declarant "must set forth specific facts showing that there is a genuine issue for trial." The declaration fails to give an approximate time in July 1974 for her conversation with Read, let alone the circumstances surrounding the statements allegedly made by Read, or whether they were made by Read in person or over the telephone. In addition, a letter from Read dated July 2, 1974, demonstrates the SBA's intention to force collection of the loan and not to forgive it. Taylor Declaration, Exhibit D. Furthermore, Curry, in a letter to the SBA dated September 16, 1974, states that she would pay $186 "twice a month as promised," and again in a letter from her to the SBA dated December 23, 1977, she promises to get back on a regular payment schedule by January 1, 1978. Taylor Declaration, Exhibits F and H. These exhibits establish beyond a peradventure of a doubt the absence of a genuinely contested issue of material fact concerning the alleged forgiveness of Curry's SBA loan.[1]

Following numerous negotiations, the SBA wrote Curry on July 7, 1978, citing the defaulted status of her loan, and informing her that foreclosure on her house was imminent unless she was able to pay in full her "arrearage, or [propose] a satisfactory and reasonable repayment schedule acceptable to all parties...." Taylor Declaration, Exhibit G; Memorandum in Support of Defendants' Motion for Summary Judgment, filed Dec. 12, 1986, at 3 (hereinafter "Defendants' Memorandum"). As a last alternative, the SBA also proposed in the same letter that if Curry felt that full payment was impossible, she could "request compromise consideration utilizing the form enclosed." *Id.*

Curry's day care center had by this time been discontinued due to a lack of business, and her income was insufficient to provide for much more than the daily support of herself, her children, and her husband, a pastor in a local church in Oakland. Accordingly, Curry opted for the SBA's proposed "compromise consideration request," and submitted an Offer in Compromise ("Offer") and a Financial Statement of Debtor to the SBA on July 16, 1978. Taylor Declaration, Exhibit H. This Offer was never acknowledged by the SBA, nor was any response to the Offer ever sent to Curry. Curry, having heard nothing from the SBA concerning her loan for over six years, finally wrote the SBA in September 1984 to inquire if the SBA could now reconvey the deed of trust on her house back to

---

**1.** It should be noted in passing that the United States is neither bound nor estopped by acts of its officers entering into agreements to do something that the law does not permit. In *Federal Crop Insurance Corp. v. Merrill,* 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947), the Supreme Court stated "anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority. The scope of this authority may be explicitly defined by Congress or be limited by delegated legislation, properly exercised through the rule-making power." As Justice Frankfurter pointed out, in quoting the Court's observation in *Rock Island, Arkansas & Louisiana Railroad Co. v. United States,* 254 U.S. 141, 143, 41 S.Ct. 55, 56, 65 L.Ed. 188, "Men must turn square corners when they deal with the Government * * *." That simply "expresses the duty of all courts to observe the conditions defined by Congress for charging the public treasury." *Federal Crop Insurance Corp.,* 332 U.S. at 385, 68 S.Ct. at 3.

her. Only this letter from Curry prompted the SBA to reexamine the file on her loan, and consider its treatment of the loan's status.

After retrieving the loan file, and reexamining the loan's status, the SBA finally responded in early 1985 to Curry's request by stating that plaintiff would either have to repay the loan in full or face a forced sale of her home. After extensive negotiations once again, the SBA elected to exercise the power of sale contained in the deed of trust and caused a notice of default to be recorded on January 14, 1986, against Curry's home and property in Oakland. Defendant's Memorandum at 4. After further talks, the SBA made a final proposal to Curry on May 19, 1986, that she pay $26,000 within ninety days to satisfy the loan or face foreclosure. Taylor Declaration, Exhibit I. Due to Curry's strained financial condition, she was unable to do so. She then filed a quiet title action in state court on August 13, 1986, seeking a declaration that the SBA no longer had a valid property interest in her home due to the expiration of the underlying obligation.

The SBA removed the case to this Court on August 22, 1986, and sought to proceed with a trustee sale on the Curry home pursuant to its power of sale under the deed of trust. Curry then brought a motion for injunctive relief and for summary judgment, and the SBA made a motion to dismiss. On October 23, 1986, after oral argument, this Court stayed the proposed foreclosure sale, and ordered the parties to file cross-motions for summary judgment. The essential facts not being in dispute, both parties agreed that this case may be disposed of on cross-motions for summary judgment.

## II

The cross-motions for summary judgment center on whether the SBA's power of sale contained in the deed of trust on Curry's property is still valid and enforceable, despite the passage of time and the possible extinguishing of the underlying promissory note. The key issues that must be decided in order to resolve this convoluted matter are whether the statute of limitations has barred the SBA from collecting the money due it under the promissory note, and if so, whether that fact will render the power of sale in the deed of trust invalid and without effect.

### A. *The Promissory Note.*

Curry has been in default on the original promissory note at least from the date when she mailed the offer to the SBA. At that point, she had not made any payments on the loan since October 17, 1975 (Taylor Declaration, Exhibit C, at 4), and she did not make any further payments after mailing the Offer to the SBA. It is undisputed that the SBA did not contact Curry from July 7, 1978, when the SBA informed her that foreclosure would be pursued if an acceptable settlement of the delinquent payments was not reached, until early 1985, when the SBA finally responded to Curry's request that the SBA reconvey the deed of trust on her home back to her. *See* Curry Declaration, Exhibit A. Even allowing for an additional ninety days after the Offer was sent by Curry to the SBA, a reasonable period of time for the SBA to assess its options on Curry's loan and contact her as to their next action, the SBA failed to act on the loan for over six years after it had informed Curry that it would foreclose on her home if a satisfactory repayment schedule was not worked out.

Both parties agree that when the United States brings an action founded on a contract, it is bound by the statute of limitations set forth in 28 U.S.C. § 2415(a): "every action for money damages brought by the United States or an ... agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the [action is brought] within six years after the right of action accrues...." The question to be decided is when did the right of action on the Curry promissory note accrue. The SBA asserts that the promissory note was an installment contract, with an *optional* acceleration clause that was never exercised. The general rule is that "where the acceleration of the installment payments in cases of

default is optional ..., then *the entire debt does not become due on the mere default, of payment* but affirmative action by the creditor must be taken to make it known to the debtor that he has exercised his option to accelerate...." *United States v. Rollinson,* 629 F.Supp. 581, 584 (D.D.C.1986), *citing United States v. Cardinal,* 452 F.Supp. 542, 547 (D.Vt.1978). However, "a party is not at liberty to stave off operation of the statute [of limitations] inordinately by failing to make demand." *Rollison,* 629 F.Supp. at 584 n. 2, *citing Nyhus v. Travel Management Corp.,* 466 F.2d 440, 452–53 (D.C.Cir.1972). In such cases, "when statutorily unstipulated, the time for demand is ordinarily a reasonable time ... [and] a matter of the parties' expectations...." *Nyhus,* 466 F.2d at 453.

In this action, the SBA waited an unreasonable period of time before exercising the acceleration option and declaring the loan in default. Although the SBA did act reasonably and charitably in allowing Curry over three years of delinquency on her payments during negotiations on a new repayment schedule, that period ended in July 1978 when the SBA informed Curry that foreclosure was imminent if an acceptable repayment schedule was not agreed upon. *See* Taylor Declaration, Exhibit G. At that point, a reasonable person in Curry's position would have believed that the SBA had expressed the clear intent to declare the full amount of the loan due and foreclose on the house if a suitable arrangement was not worked out. Indeed, it is apparent that Curry believed so, and thus submitted the Offer to the SBA, (Taylor Declaration, Exhibit H), thereafter awaiting the SBA's reply. The SBA never replied.

The SBA's right of action on the Curry promissory note accrued at least by the date on which a reasonable person would have declared the note in default and due in full. *Nyhus.* A reasonable person would have done so within ninety days after receiving Curry's Offer, or would have notified Curry that the Offer was an acceptable resolution of the loan's delinquency. Even allowing the SBA one hundred and twenty days from the mailing of Curry's Offer as a reasonable period of time to declare the loan in default and exercise the acceleration clause, or to reply to Curry's Offer, the SBA failed to respond to the Offer or to bring an action on the defaulted promissory note within the requisite six years. Thus, any action by the SBA on the promissory note executed by Curry is barred by the statute of limitations set forth in 28 U.S.C. § 2415(a).

However, the SBA further argues that the deed of trust, including the power of sale, has survived regardless of whether or not the underlying loan obligation was extinguished by the application of the statute of limitations. This argument must be examined in light of both federal and state law.

### B. *Power of Sale.*

The statute of limitations set out in 28 U.S.C. § 2415(a) by its terms applies only to actions for *"money damages* brought by the United States." (Emphasis added.) An action to enforce a property interest, or the exercise of a private remedy to protect a property interest, is not governed by the limits set out in § 2415(a), for the statute itself further provides that "[n]othing herein shall be deemed to limit the time for bringing an action to establish the title to, or right of possession of, real or personal property." § 2415(c). It is evident that § 2415(a) was enacted with the purpose of applying to money damages based on contract, and that Congress made the distinction between actions on contract and those founded on other theories, such as a tort, § 2415(b), or a property interest, § 2415(c). *See* S.Rep. No. 1328, 89th Cong., 2d Sess., *reprinted in* 1966 U.S.Code Cong. & Admin.News 2502–14. *See also Cracco v. Cox,* 414 N.Y.S.2d 404, 66 A.D.2d 447 (1979). The statute of limitations in § 2415(a) will not bar the SBA from exercising the power of sale in the deed of trust if that mechanism indeed survives the running of the statute of limitations on the underlying personal obligation.

At the oral argument on the cross-motions for summary judgment, both parties agreed that the status of SBA's prop-

erty interest in the Curry property, the deed of trust and the power of sale, should be governed by California law. This is in accordance with the general rule that the federal common law governing contracts in which a federal agency is a party should be that of the state in which the contract was executed, assuming the state law does not unduly impact on a valid federal interest or the policies of the federal agency entering into the contracts. *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979); *United States v. Crain*, 589 F.2d 996 (9th Cir.1979) (guarantor of a SBA loan can assert state law defenses to the SBA's claim on their personal guarantee; state law adopted as the federal common law).

The general rule in California, established at an early date and repeatedly affirmed, was that a deed of trust "never outlaws" and that the power of sale may be exercised even though the statute of limitations has barred any action on the underlying debt or obligation. *Grant v. Burr*, 54 Cal. 298, 301 (1880); *Carson Redevelopment Agency v. Adam*, 136 Cal.App.3d 608, 610, 186 Cal.Rptr. 615, 617 (1982). *See* 3 B. Witkin, Summary of California Law, Security Transactions in Real Property §§ 84–85, at 1557 (8th ed. 1984). Thus, though the the statute of limitations has run on the underlying Curry debt and, therefore, bars an action to enforce the note itself or for judicial foreclosure, the power of sale contained in the SBA's deed of trust could still be exercised under the rule set forth in *Carson Redevelopment Agency*, 136 Cal.App.3d at 610, 186 Cal. Rptr. at 617.

However, the application of this rule has been considerably complicated by the passage in 1982 of the new Marketable Record Title Act, California Civil Code § 880.020 *et seq.* The purpose of the new statute is to "simplify and facilitate real property title transactions by enabling persons to rely on record title." 3 B. Witkin, Summary of California Law, 1984 Supp., Real Property §§ 9B, 9C, 9D, at 120–23 (hereinafter "Real Property"). One of the property interests specifically addressed and governed by the new statute is the deed of trust and the accompanying power of sale. Although neither the parties nor the Court have been able to uncover a single case interpreting or applying this new statute, despite an operative date of January 1, 1983, certain effects of the statute are relatively clear from its language.

Initially, the statute has the clear purpose and effect of reversing the general rule that the power of sale under a deed of trust "never outlaws," and survives indefinitely the extinction of the underlying debt. *Id.*, § 9D at 123; 1 H. Miller & M. Starr, Current Law of California Real Estate, 1986 Supp., §§ 3:81, 3:81A at 276–77. Under the statute, the enforcement of the deed of trust by either judicial action *or* the power of sale is barred by the passage of any of the following periods of time: (1) ten years after "the final maturity date or the last date fixed for payment of the debt or performance of the obligation [*if* that date] is ascertainable from" the instrument on record; (2) sixty years "after the date the instrument that created the security interest was recorded" *if* "the final maturity date or the last date fixed for payment ... or performance ... is *not* ascertainable from the record"; or (3) if "a notice of intent to preserve the security interest is recorded within the time prescribed in [either of the two above alternatives], 10 years after the date the notice is recorded." Cal.Civ.Code § 882.020 (emphasis added).

The statute also makes clear the effect of the expiration of a mortgage or deed of trust: "Expiration of the lien of a mortgage, deed of trust, or other security interest pursuant to this chapter or *any* other statute renders the lien unenforceable by any means commenced or asserted thereafter and is equivalent for all purposes to a certificate of satisfaction, reconveyance, release, or other discharge of the security interest." Cal.Civ.Code § 882.030 (emphasis added). However, the statute also provides for a number of "grace periods." Among them is a general grace period, applicable to all "ancient mortgages and deeds of trust," which provides that "[t]his chapter [addressing ancient mortgages and deeds of trust] shall not cause the lien of a

mortgage, deed of trust, or other security interest in real property to expire or become unenforceable before the passage of five years after the operative date of this chapter." Cal.Civ.Code § 882.040(b) (Jan. 1, 1983).

Curry argues that under § 882.030 the SBA's power of sale is now without effect because the deed of trust has expired by the passing of the statute of limitations on the underlying note. She is mistaken. It is true § 882.030 provides that the expiration of a deed of trust "pursuant to this chapter or *any other* statute," including the statute of limitations, will render the "lien" unenforceable by any means, including the power of sale. *See* Real Property § 9D at 123. However, the general rule in California prior to the passage of the Marketable Record Title Act was that the power of sale and the deed of trust survived the underlying debt or obligation. Assuming *arguendo* that the SBA's deed of trust and power of sale would expire with the running of the statute of limitations on Curry's underlying note, the expiration of the SBA's interests would be entirely due to the passage of the Marketable Record Title Act and § 882.030. Therefore, § 882.040(b) would unavoidably be drawn into play in this instance. Under § 882.040(b), the new Act may not "cause the lien of a mortgage, deed of trust, or other security interest in real property to expire or become unenforceable before the passage of five years after the operative date of this chapter" (January 1, 1983). *See* Real Property § 9D at 123. Therefore, even if the new Act operated so as to extinguish the SBA's deed of trust and power of sale on the Curry property, the SBA's interests are nonetheless valid for at least five years after the active date of the Marketable Record Title Act, or until January 1, 1988.

In this action, it appears that the final date fixed for the payment of the underlying note is *not* ascertainable from the record. *See* Taylor Declaration, Exhibit B. If so, under § 882.020(b) the date of expiration for the SBA's interests in the Curry property may in fact not be for sixty years from the date the instrument that created

the security interest was recorded. *See* Cal.Civ.Code § 882.020(a)(2). In any event, the earliest date at which the SBA's deed of trust and power of sale on the Curry property could expire is January 1, 1988. Under any application of the new Marketable Record Title Act to the action at hand, Curry's quiet title action is premature and must fail. As of the date of this action, the SBA possesses a valid deed of trust concerning the Curry property, and the accompanying power of sale may be exercised at its election and pursuant to California law at least until January 1, 1988.

III

Upon a careful review of the facts and the law presented in this action, and good cause appearing therefor,

IT IS HEREBY ORDERED that:

1. Curry's motion for summary judgment is DENIED.

2. Defendants' motion for summary judgment is GRANTED.

3. Defendants shall prepare and submit a form of judgment, approved as to form by Curry, to this Court on or before June 30, 1987.