UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 93-8335
_____


WILLIAM C. DAVIDSON, P.C.,

Plaintiff-Appellant,

versus

FEDERAL DEPOSIT INSURANCE CORPORATION
AS RECEIVER FOR UNITED BANK OF TEXAS,

Defendant-Intervenor-Appellee.

_____

Appeal from the United States District Court
For the Western District of Texas
_____

(January 25, 1995)


Before GARWOOD and EMILIO M. GARZA, Circuit Judges, and HEAD,[*]
District Judge.

GARWOOD, Circuit Judge:

Plaintiff-appellant William C. Davidson (Davidson) brought
this suit to enjoin and, ultimately, to set aside a nonjudicial
foreclosure sale of his property conducted on behalf of the Federal
Deposit Insurance Corporation (the FDIC) as receiver for United
Bank of Texas. Following the district court's entry of judgment
for the FDIC as receiver, Davidson filed a timely notice of appeal.

_____

[*]    District Judge of the Southern District of Texas, sitting by
designation.

We affirm.

## Facts and Proceedings Below

The facts in this case are undisputed. On October 5, 1983, R. Bird Corporation, a Texas corporation, acting through its president Richard Bird, executed a "Real Estate Note" for $350,000 payable, principal and interest, on April 13, 1984, to United Bank of Texas (the Bank) in Travis County, Texas. The note, as recited therein, was secured by a lien on a tract of land located in Travis County, Texas (the Property), described in a deed of trust dated October 5, 1983, and recorded in the Travis County, Texas real property records. The note and deed of trust likewise recite that the note is in part payment of the purchase price of the property and is also secured by a vendor's lien retained in deed of even date of the property to the maker of the note. The deed of trust contained a clause granting the Bank's trustee a power to sell the Property in the event of default in the note. The note's due date passed, but the Bank did not foreclose. Thereafter, on October 6, 1986, R. Bird Corporation deeded the Property to Richard Bird; in the deed, Richard Bird assumed the outstanding indebtedness against the Property.

On June 4, 1987, the Texas Banking Commissioner declared the BankSQa Texas bank, the deposits of which were insured by the FDICSQinsolvent and appointed the FDIC receiver of the Bank. Vernon's Ann. Tex. Civ. Stats. art. 489b, §§ 1,3. As the Bank's receiver, the FDIC acquired the Bank's assets, including the deed of trust and the promissory note, the cause of action on which accrued April 13, 1984, the date the note became past due. On

2

March 27, 1990, almost six years after the note became past due and almost three years after the FDIC became receiver, Davidson acquired the Property from Richard Bird and subsequently invested approximately $8,000 in repairs to the improvements thereon.

In March 1992, Davidson petitioned a Texas state court for injunctive relief against the Bank's substitute trustee under the deed of trust, seeking to prevent a proposed nonjudicial foreclosure on the Property. After the state court granted a temporary restraining order, the FDIC as receiver intervened as a defendant and removed the case to the district court below, where Davidson's request for injunctive relief was denied on April 6, 1992. The next day, the Bank's substitute trustee, acting on behalf of the FDIC as receiver, conducted a nonjudicial foreclosure sale in Travis County in accordance with the deed of trust. The FDIC as receiver was the successful bidder at the sale, purchasing the Property for a $104,300 credit on the note.

Davidson claimed the sale was untimely and asked the district court to set it aside on that basis. After a bench trial on stipulated facts, the district court entered judgment for the FDIC as receiver. The court held that the sale was valid because it took place within the six-year limitations period of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA), Pub.L. 101-73, 103 Stat. 183 (1989); 12 U.S.C. § 1821(d)(14). Davidson now appeals, principally arguing that, on the date FIRREA became effective, the deed of trust had already become void under Texas law and therefore could not be revived.

3

## Discussion

The ultimate issue in this case is whether the power of sale contained in the Bank's deed of trust acquired by the FDIC as receiver was still enforceable on August 9, 1989, the date FIRREA became effective. Resolution of that issue initially turns on whether the claim was valid when acquired by the FDIC on June 4, 1987. If time-barred or otherwise void under state law at the time of the FDIC's appointment as receiver, the claim cannot be revived merely because a government agency holds it. *F.D.I.C. v. Dawson*, 4 F.3d 1303, 1306-07 (5th Cir. 1993), *cert. denied*, 114 S.Ct. 2673 (1994); *see also R.T.C. v. Seale*, 13 F.3d 850, 853 (5th Cir. 1994) (government cannot revive claims that are stale when acquired unless Congress explicitly directs otherwise); *F.D.I.C. v. Belli*, 981 F.2d 838, 842-43 (5th Cir. 1993); *F.D.I.C. v. Bledsoe*, 989 F.2d 805, 808 (5th Cir. 1993). An acquired claim is thus valid if, at the time of the FDIC's appointment as receiver, it is still good under the law that created it. In Texas, a mortgage is an incident of the debt; it is therefore generally enforceable so long as the debt itself is enforceable, which is to say, four years after the cause of action on the debt accrued. Tex. Civ. Prac. & Rem. Code §§ 16.004(a)(3) (debt), 16.035 (power of sale) (1986). Here, as the parties concede, the FDIC became receiver and acquired the deed of trust some three years after the cause of action on the note accrued; the claim was therefore good at the time of the FDIC's appointment.

The problematic issue in this case, then, is whether the deed of trust remained enforceable on the effective date of FIRREA,

4

August 9, 1989. That is, although both sides concede the validity of the claim when the FDIC was appointed, both dispute what happened to the claim in the intervening two years between the FDIC's appointment as receiver and the effective date of FIRREA. If the claim died in the interim, FIRREA does not revive it, and the foreclosure should have been set aside. If the claim survived the interim, then the limitation provisions of FIRREA apply, and the foreclosure was timely.[1]

Accordingly, the emphasis in this litigation has been on what law applies during the two-year period between the FDIC's appointment and FIRREA. The district court concluded that, once the FDIC acquired the Bank's claim, the six-year general limitations period of 28 U.S.C. § 2415(a), the general statute of limitations for contract actions, relayed the deed of trust beyond FIRREA's effective date. In other words, because the deed of trust was valid when acquired, the Texas four-year limitations period was displaced by the six-year federal rule under 28 U.S.C. § 2415(a), which in turn carried the deed of trust over FIRREA's effective date and into the safe harbor of FIRREA's own six-year limitations period. According to the reasoning of the district court, it was

---

[1] FIRREA explicitly imposes a six-year statute of limitations on "any contract claim" brought by the FDIC as a receiver. 12 U.S.C. § 1821(d)(14)(A)(i)(I). According to section 1821(d)(14)(B)(i), the limitations period began in this case on the date of the FDIC's appointment as receiver, June 4, 1987, and ended on June 4, 1993. Therefore, if FIRREA applies to this case if, in other words, the claim acquired by the FDIC receiver was valid on the effective date of FIRREA, then the April 1992 foreclosure was timely. *See F.D.I.C. v. Belli*, 981 F.2d 838, 842-43 (5th Cir. 1993) (section 1821(d)(14) does not revive claims that expired before FIRREA's effective date of August 9, 1989).

by way of this statute-of-limitations relay race that the foreclosure avoided a time bar.

Section 2415(a) provides in part, "[E]very action for money damages brought by the United States . . . or agency thereof which is founded upon any contract . . . shall be barred unless the complaint is filed within six years after the right of action accrues."  Because the debt was not barred on June 4, 1987, when the FDIC was appointed receiver, the debt then became subject to section 2415(a)'s six-year limitations period, calculated from the note's April 13, 1984, maturity.  *Belli* at 840-42; *Bledsoe* at 807 & n.4.  But for FIRREA, the debt would thus have become barred April 13, 1990.  Because the debt was not barred when FIRREA became effective August 9, 1989, FIRREA's six-year limitations period, which is calculated from June 4, 1987, meant that the debt would not be barred until June 1993, well after the foreclosure (*see* note 1, *supra*).  *Bledsoe* at 808-809.

Davidson argues that section 2415(a) does not apply to mortgage foreclosures, and apparently every court that has considered this question agrees. *See United States v. Alvarado*, 5 F.3d 1425, 1430 (11th Cir. 1993); *Westnau Land Corp. v. U.S. Small Business Admin.*, 1 F.3d 112, 115-16 (2d. Cir. 1993) (collecting cases); *United States v. Dos Cabezas Corp.*, 995 F.2d 1486, 1489 (9th Cir. 1993); *United States v. Ward*, 985 F.2d 500, 501-03 (10th Cir. 1993); *Cracco v. Cox*, 66 A.D.2d 447, 414 (N.Y. 4th Dept. 1979); *United States v. Warren Brown & Sons Farms*, 1994 WL 654440 (E.D. Ark. Sept. 29, 1994); *United States v. Succession of Sidon*, 812 F.Supp. 674, 675-76 (W.D. La. 1993); *United States v. LaSalle*

6

*National Trust*, 807 F.Supp 1371, 1372-73 (N.D. Ill. 1992); *United States v. Mr. Wonderful Enterprises*, 1992 WL 521532 (E.D.N.Y. Feb. 25, 1992); *United States v. Freidus*, 769 F.Supp. 1266, 1273-74 (S.D.N.Y. 1991); *United States ex rel. Small Business Administration v. Edwards*, 765 F.Supp. 1215, 1222 (M.D. Pa. 1991); *United States v. Copper*, 709 F.Supp. 905, 908 (N.D. Iowa 1988); *United States v. Matthews*, 1988 WL 76567 (E.D.N.Y. 1988); *Curry v. United States*, 679 F.Supp. 966, 970 (N.D. Cal. 1987).

We join the Ninth, Eleventh, Tenth, and Second Circuits in this respect and hold that section 2415(a) does not directly apply to foreclosures on security for the debt. It is a well-established principle that all statutes of limitations against the United States are to be strictly construed. *Badaracco v. Commissioner*, 104 S.Ct. 756, 761 (1984). The courts have all agreed that, by characterizing the action as one for "money damages," the strict terms of section 2415(a) distinguish between actions for recovery on the promissory note and actions to foreclose on the security. In short, although both an action on the promissory note and a foreclosure under the deed of trust are founded upon contract, only the former is strictly an action for money damages within the meaning of section 2415(a).[2] We thus disagree with the district

---

[2] We observe that FIRREA's six-year period applicable to "any contract claim," 12 U.S.C. § 1821(d)(14)(A)(i)(I), has no such (or similar) "for money damages" limitation as is contained in section 2415(a). Thus it is clear that FIRREA applies to foreclosure actions.

This limitation in section 2415(a)'s coverage is explained, though perhaps not justified, by ancient distinctions between the right to collect on the debt (or for a deficiency) and the right to foreclose on a deed of trust. As one New York appellate court has observed, "It is a long-standing rule that the right to

court that section 2415(a) directly governs the mortgage's foreclosability between the date of the FDIC's appointment as receiver and the effective date of FIRREA.

While apparently conceding that section 2415(a) does not apply to foreclosures, the FDIC argues that section 2415(c) represents an affirmative congressional prohibition on limitations against the government's rights to foreclose, thus displacing state law to the contrary. FDIC's Brief at 14 ("[T]he inapplicability of section 2415(a) merely confirms the applicability of section 2415(c), which places *no* limitations on the time for . . . foreclosure."). Subsection (c) provides, "Nothing herein shall be deemed to limit the time for bringing an action to establish the title to, or right of possession of, real . . . property." The plain meaning of

---

foreclose a mortgage securing a debt is distinct from the right to bring an action for money damages on the note . . . . Congress recognized and preserved this distinction and intended that section 2415 apply only to actions for money damages." *Cracco*, 66 A.D.2d at 449. An action for the collection of a debt is an action at law for money damages, whereas an action to foreclose on a deed of trust is an equitable action to sell the property, irrespective of the debt's amount. Finally, the foreclosure remedy is *in rem*, not *in personam*, and is therefore limited to the property itself.

Courts have specifically held that section 2415(a) does not limit the government's power of sale. *See Dos Cabezas Corp.*, 995 F.2d at 1490 (relying on subsection (c)); *Curry v. United States Small Business Admin.*, 679 F.Supp. 966, 970 (N.D. Cal. 1987) (subsection (a) not a bar to the SBA's exercise of a power of sale in a deed of trust).

In Texas, the right to nonjudicially foreclose a deed of trust has been described as "a mere right to have recourse to the property for the satisfaction of the obligor's debt." 30 *Tex. Jur. 3rd*, *Deeds of Trust And Mortgages*, § 5 at 465. Moreover, Texas law considers a sale under a deed of trust "equivalent to a strict foreclosure by a court of equity." *First Federal Savings and Loan Ass'n v. Sharp*, 347 S.W.2d 337, 340 (Tex.Civ.App.SQDallas 1961), *aff'd*, 359 S.W.2d 902 (Tex. 1962) (citation omitted).

section 2415(c), however, is to clarify or confirm *that subsection (a) does not apply* to actions relating to land titles. *Cf*. S. Rep. No. 1328, 89th Cong., 2d Sess. 2 (1966), *reprinted in* 1966 U.S.C.C.A.N. 2502.[3]  Section 2415(c) therefore has no independent preemptive force.  Consequently, there is no *statutory* basis for the proposition that there are no pre-FIRREA time limits on the FDIC receiver's power to foreclose.

Finally, the FDIC contends that, if section 2415(a) does not apply to foreclosures, then there can be no state limitation on the government's right to foreclose because of the federal common law rule that time does not run against the sovereign. *Guaranty Trust Co. of New York v. United States*, 58 S.Ct. 785 (1938); *United States v. Summerlin*, 60 S.Ct. 1019 (1940); *see also United States v. Palm Beach Gardens*, 635 F.2d 337, 339-40 (5th Cir.) (explaining

---

[3]  This report includes the following with respect to subsection (c):

"EXCEPTION AS TO GOVERNMENT ACTIONS AS TO TITLE TO REAL AND PERSONAL PROPERTY

Subsection (c) makes it clear that no one can acquire title to Government property by adverse possession or other means.  This is done by providing that there is no time limit within which the Government must bring actions to establish title to or right of possession of real or personal property of the United States.  In other words, there is no statute of limitations applying to Government actions of this type."  1966 U.S.C.C.A.N. at 2505.

. . .

"Subsection (c) expressly provides that nothing in the new section shall be construed to limit the time in which the Government may bring an action to establish the title to, or right of possession of, real or personal property."  *Id*. at 2510.

9

that the general rule "derives from the common law principle that immunity from limitations periods is an essential prerogative of sovereignty"), *cert. denied*, 102 S.Ct. 635 (1981). Setting aside whether this particular rule applies in the absence of a significant federal interest in conflict with state law, *see United States v. California*, 113 S.Ct. 1784, 1791 (1993), we decline to view the legal issue narrowly as one of limitations. We believe the more precise issue to be whether the mortgage survives the debt, and, *in a case such as this*, that question is normally determined by state, not federal, law. *See, e.g., Curry v. United States Small Business Admin.*, 679 F.Supp. 966, 970-72 (N.D. Cal. 1987) (relying on the California state law doctrine that the mortgage does survive a limitations bar on the underlying debt).

Although generally federal law governs issues involving rights of the United States arising under nationwide federal programs, it begs the question here to assume, as the government does, that the FDIC acts in this case pursuant to a significant federal interest. It is now well established that there is no general federal common law, *Erie Railroad Co. v. Tompkins*, 58 S.Ct. 817, 822 (1938), and, further, that federal common law rules should displace state laws only in the case of a significant conflict with specific or unique federal interests. *See Boyle v. United Technologies Corp.*, 108 S.Ct. 2510, 2514-16 (1988). Here, the displacement of state law in favor of federal common law presupposes the existence of a significant federal proprietary interest in conflict with state law. *See United States v. Kimbell Foods, Inc.*, 99 S.Ct. 1448 (1979); *Clearfield Trust Co. v. United States*, 63 S.Ct. 573 (1943).

10

*See also* 19 Charles A. Wright et al., *Federal Practice and Procedure* § 4514 (1982). Absent such an interest or some express congressional policy to the contrary, state law governs state-law rights held by the FDIC in its limited capacity as the receiver of a nonfederal entity. In its supposition that federal law applies to this case, the FDIC cites a series of cases in which the courts applied *Kimbell Foods* to displace state rules in favor of federal common law. The absence here of a significant federal interest, however, critically distinguishes this case from those in which the courts applied federal law to preserve the government's right to foreclose.

For instance, in *United States v. Ward*, 985 F.2d 500, 503 (10th Cir. 1993), a Tenth Circuit case relied on by the FDIC here, the United States had itself made loans secured by real estate mortgages. The loans were made by the Farmers Home Administration (FmHA) in accordance with federal policy under the Farm and Rural Development Act of 1949. Accordingly, the case involved the rights of the United States in a nationwide federal programSQthe very reason the Court displaced state law in *Kimbell Foods*. It was explicitly upon this basis that the Tenth Circuit preempted state law:

> "The basic reason why the Wards cannot prevail is that federal law governs issues involving the rights of the United States arising under nationwide federal programs. Consequently, because the underlying loans were made to the Wards by the Farmers Home Administration of the Department of Agriculture and emanated from the Farm and Rural Development Act of 1949, a nationwide federal program, the government is not affected by Oklahoma's lien expiration law." *Ward*, 985 F.2d at 503 (citations omitted).

11

For this reason, the court in *Ward* determined, "[I]f the government is barred from the enforcement of the mortgage, the limitation must come from federal law." *Id.*

Indeed, all other circuit court decisions arguably on point deal with loans or subsidies made or guaranteed by the federal government under the auspices of some congressionally established, nationwide program. In addition to *Ward*, see, for example, *United States v. Alvarado*, 5 F.3d 1425 (11th Cir. 1993) (loan made by the FmHA); *United States v. Dos Cabezas*, 995 F.2d 1486 (9th Cir. 1993) (same); *Cracco v. Cox*, 66 A.D.2d 447 (4th Div. N.Y. 1979) (same); *United States v. City of Palm Beach Gardens*, 635 F.2d 337 (5th Cir.) (action to recover funds used in the construction of a nonprofit hospital sold to a profit-making organization pursuant to the Hill-Burton Act), *cert. denied*, 102 S.Ct. 635 (1981); *Alger v. United States*, 252 F.2d 519 (5th Cir. 1958) (action for the recovery of federal meat subsidies made under the Livestock Slaughter Subsidy Program authorized under the Emergency Price Control Act of 1942); *United States v. Borin*, 209 F.2d 145 (5th Cir.) (same), *cert. denied*, 75 S.Ct. 33 (1954). Besides FmHA loans, the most common fact pattern involves loans made or guaranteed by the Small Business Administration (SBA). *See United States v. Kimbell Foods, Inc.*, 99 S.Ct. 1448 (1979); *Westnau Land Corp. v. United States Small Business Admin.*, 1 F.3d 112 (1993); *United States v. Sellers*, 487 F.2d 1268 (5th Cir. 1974). In such cases, there is likewise a valid federal interest connected to a nationwide program. *See Kimbell Foods, Inc.*, 99 S.Ct. 1448 (1979) (involving a loan guaranteed by the SBA).

12

Here, the FDIC asserted the power of sale, not in its corporate capacity, but only in the limited capacity of receiver of a local, nonfederal entity. The real estate lien note and the deed of trust documented a local transaction between private parties in Texas, and the deed of trust was secured by a lien on Texas real property. In this context, the concerns of *Kimbell Foods* are not implicated.[4] *See California*, 113 S.Ct. at 1791 (1993) (discussing in dicta how the application of federal law presupposes the government acting "in its sovereign capacity"). The Supreme Court has recently made clear that the capacity in which the FDIC acts may have a determinative impact on whether a state or federal rule should control. In *O'Melveny & Myers v. F.D.I.C.*, 114 S.Ct. 2048 (1994), the FDIC, as receiver for a failed federally insured, California-chartered savings and loan, asserted a tort claim against former counsel for the S&L. Although both sides conceded that state law created the right upon which the FDIC acted, the government argued that federal law should control whether "knowledge of corporate officers acting against the corporation's interest will be imputed . . . to the FDIC." *Id.* at 2052. On that issue, the FDIC argued for "federal pre-emption . . . over the law

---

[4]    Whereas there is no significant federal interest here, there is a strong local interest in state regulation of land titles. *See Mason v. United States*, 43 S.Ct. 200, 203-04 (1923); *see generally* 14 Charles A. Wright et al., *Federal Practice and Procedure* § 3652 n.4 (1985). Such strong state interests should "be overridden by the federal courts only where clear and substantial interests of the National Government, which cannot be served consistently with respect for such state interests, will suffer major damage if the state law is applied." *United States v. Yazell*, 86 S.Ct. 500, 507 (1966) (refusing to displace state law relating to family property arrangements).

13

of imputation . . . [applicable] to the FDIC suing as receiver."
*Id.* at 2053.

In *O'Melveny*, the FDIC quoted the following language of *Kimbell Foods*: "[F]ederal law governs questions involving the rights of the United States arising under nationwide federal programs." *Id.* "But the FDIC is not the United States," the Court responded, "and even if it were we would be begging the question to assume that it was asserting its *own* rights rather than, as receiver, the rights of [the S&L]." *Id.* In the absence of an applicable and contrary federal rule, the Court refused to displace state law merely because of the FDIC receiver's connection to the suit. Before tolerating the preemption of state law, the Court insisted that the FDIC identify a "significant conflict between some federal policy or interest and the use of state law." *Id.* at 2055 (citation omitted). With particular emphasis on the FDIC's role as receiver, the Court found a palpable lack of a "specific" and "concrete" federal interest: "The rules of decision at issue here do not govern the primary conduct of the United States or any of its agents or contractors, but affect only the FDIC's rights and liabilities, as receiver, with respect to primary conduct on the part of private actors that has already occurred." *Id.*

The Court rejected the suggestion of the FDIC that there was a federal interest in simply not depleting the deposit insurance fund. Because "neither FIRREA nor the prior law sets forth any anticipated level for the fund," the Court concluded that the FDIC was effectively asserting a "federal policy that the fund should always win." *Id.* The Court rejected this so-called "more money"

14

argument. *Id. See also United States v. Yazell*, 86 S.Ct. 500, 504-05 (1966). In this case, the FDIC has made the identical argument: "Because the FDIC/Receiver's foreclosure of this property reduces the monetary exposure of the federal deposit insurance fund '[t]he FDIC's right to recovery in these instances is determined under comprehensive federal law that preempts state law in this field'" (quoting *Gaff v. FDIC*, 919 F.2d 384, 390 (6th Cir. 1990), *modified*, 933 F.2d 400 (1991)).

By asserting here the same generalized federal interest in winning, the FDIC has again failed to identify, nor can we find, a specific, concrete federal interest within the meaning of *Kimbell Foods*. As a result, state law should govern state-law rights held by the FDIC in its capacity as receiver of a state-chartered institution.

We note in passing a relevant lower court decision, in which a California district court applied California law to determine whether a mortgage can survive the extinguishing or barring of the underlying debt. *Curry v. United States Small Business Admin.*, 679 F.Supp. 966, 970-72 (N.D. Cal. 1987).[5] In so doing, the district

---

[5]     In contrast to the case *sub judice*, the government in *Curry* had made the loan secured by the mortgage. The court therefore appropriately determined that federal law controlled, but chose, in the absence of a specific federal rule, to adopt the relevant state law under the terms of *Kimbell Foods*. State law was therefore adopted as the federal rule and applied to the facts at hand. Here, in comparison, we determine that state, not federal, law controls and hence need not determine the propriety of adopting the state rule. On this basis, we distinguish *United States v. Cooper*, 709 F.Supp. 905 (N.D. Iowa 1988), in which the court refused to adopt the Iowa state rule that the barring of a debt bars the mortgage. Because the loan in *Cooper* was made by the SBA under a nationwide federal program, the case fell clearly within *Kimbell Foods*. Its decision not to adopt state law as the

15

court in *Curry* confronted a situation remarkably similar to the one here.  There, the government, through the SBA, made a loan to the plaintiff secured by a deed of trust with a power of sale.  At issue was the validity of the attempted nonjudicial foreclosure under the deed of trust, notwithstanding that the underlying loan obligation was extinguished by the general six-year statute of limitations found in section 2415(a).  The court reviewed California law to determine the effect of this limitations bar on the enforcement of the mortgage.  California, at least at the time of the *Curry* decision, followed the majority rule "that a deed of trust 'never outlaws' and that the power of sale may be exercised even though the statute of limitations has barred any action on the underlying debt or obligation."  *Id.* at 971.[6]  For this reason, the court held that the SBA could exercise its power of sale even though section 2415(a) barred an action on the note.

Though in one sense, the situation in this case is identical to *Curry*, in another, it is the reverse.  Here, unlike *Curry*, there is no dispute that the FDIC could sue on the note because section 2415(a), which applies directly to the debt only, carried the FDIC's power to enforce the debt past FIRREA's effective date. Thus, in this case, we are not concerned with the effect of a

---

relevant federal rule of decision is therefore inapposite to the case at hand.

[6]     These facts were complicated by the passage of a California statute designed to reverse the general rule that a power of sale survives indefinitely.  *Id.* at 971.  Nevertheless, the exceptions built into the statute were such that the law could not invalidate a power of sale until five years after the statute's operative date.  The SBA's interests fell within this safe harbor provision.  *Id.* at 972.

*barred* debt on the mortgage, but instead with the effect of an *enforceable* debt on the mortgage. The critical question in this case, therefore, is the obverse of *Curry*'s: can the power of sale under a deed of trust be extinguished when the note secured by the deed of trust is still enforceable? In other words, although both parties agree that the FDIC is not barred from suing the debtor on the note for the underlying debt, they dispute whether enforcement of the mortgage itself is barred. To answer this question, we turn to the law of Texas and inquire into the connection between mortgages and the notes they secure.

It is a general and long-established principle in Texas that a mortgage is a mere incident of the debt. In *Duty v. Graham*, 12 Tex. 214 (1854), the Texas Supreme Court held that, a mortgage being merely security for the debt and not a conveyance in itself, the debt "is the principal thing," to which the mortgage is only an "incident." *Id.* at 217. *See also Slaughter v. Owens*, 60 Tex. 668, 672 (1884) ("The vendor's lien exists by reason of the debt alone. So long as that continues and can be enforced the lien subsists and can be foreclosed."); *Falwell v. Hening*, 78 Tex. 278, 279 (1890) ("The lien was incident to the claim for the purchase money. If the note was not barred the lien was not"; limitations on note suspended by absence of maker from state); *Stone v. McGregor*, 99 Tex. 51, 87 S.W.334, 336 (1905) (". . . the note was barred by the statute of limitation of four years . . . nothing occurred to suspend the statute of limitation . . . . There being no right of recovery on the note, there can be no foreclosure of the lien . . . ."); *Brown v. Cates*, 99 Tex. 133, 87 S.W. 1149, 1151 (1905) (" .

17

. . the limitation available to a purchaser of property incumbered by a lien to secure a debt of his vendor is that which applies in favor of the debtor against the creditor; and that, so long as the creditor's cause of action against the debtor upon the debt is not barred, the right to foreclose against the purchaser of the property continues. But when the debt is barred the action to foreclose the lien is also barred"); *Jolly v. Fidelity Union Trust Co.*, 118 Tex. 58, 10 S.W.2d 539, 541 (1928) ("The rule has been long established in this state that the lien by which a debt is secured is incident to the debt; and that a written extension of the maturity of the debt, by the debtor, operates as an extension of the lien also, unless the extension agreement shows otherwise").[7]

---

[7] We acknowledge that there is some historical justification in Texas for a distinction between a judicial and a nonjudicial foreclosure with respect to this rule. Although Texas law has long recognized that a mortgage is merely an incident of the debt, in 1887 the Texas Supreme Court drew a short-lived distinction between judicial and nonjudicial foreclosures. *Fievel v. Zuber*, 3 S.W. 273 (Tex. 1887). In *Fievel*, the court held that a nonjudicial foreclosure under a power of sale, unlike a judicial foreclosure, could be exercised after the statute of limitations had barred enforcement of the underlying debt. *Id.* at 274. The court reasoned that statutes of limitations do not "destroy" the debt, but merely bar its judicial enforcement.

Whatever relevance this distinction between nonjudicial and judicial foreclosures may have had at the time of *Fievel*, the law of Texas has since been changed to conform to the larger principle that the mortgage follows the debt. Shortly after a statutory provision in 1905 that limited the time for exercising a power of sale to ten years after the maturity of the debt, the Texas legislature, in amendments some eight years later, exactly matched the limitations period for nonjudicial (as well as judicial) foreclosures to the four-year rule for debts. *See, e.g., Stubbs v. Lowrey's Heirs*, 253 S.W.2d 312, 313 (Tex.Civ.App.SQEastland 1952, writ ref. n.r.e.) (where the debt was barred by limitations, the foreclosure sale under a deed of trust was "void"); *Howard v. Stahl*, 211 S.W. 826, 828 (Tex.Civ.App.SQAmarillo 1919, no writ) (same); *Rudolph v. Hively*,

18

Consistent with this principle, Texas law matches the limitations period of the mortgage to that of the note. Each is four years from the maturity of the debt. Tex. Civ. Prac. & Rem Code § 16.004(a) (debt); 16.035(a), (b), & (d).[8] If the debt is

188 S.W. 721, 722-23 (Tex.Civ.App.SQAmarillo 1916, writ ref.) (same). The relevant Texas statutes do not distinguish for limitations purposes between judicial and nonjudicial foreclosures. *See* note 8, *infra*.

Likewise, at least prior to the adoption of Article 9 of the Uniform Commercial Code, the Texas law of chattel mortgages and other personal property liens reflected the principle that the mortgage follows the debt it secures. *University Savings and Loan Ass. v. Security Lumber Co.*, 423 S.W.2d 287, 292 (Tex. 1967) ("[L]iens are incidents of and inseparable from the debt."). Indeed, the statute of limitations on chattel mortgages was considered implicit in the four-year period for debts (found formerly in article 5527). *Alexander v. Ling-Temco-Vought, Inc.*, 406 S.W.2d 919, 924-25 (Tex.Civ.App.SQTexarkana 1966, writ ref. n.r.e.). Consequently, the "lien followed the debt, and was not barred so long as the debt was not barred." *Liquid Carbonic Co. v. Logan*, 79 S.W.2d 632, 633 (Tex.Civ.App.SQAustin 1935, no writ). To the extent Texas' version of Article 9 of the Uniform Commercial Code does not speak to this question, these common-law principles still control and "supplement . . . provisions" of the code. Tex. Bus. & Com. Code § 1.103 (1994).

[8]   Section 16.035 provides in relevant part:

"(a) A person must bring suit for the recovery of real property under a lien debt or the foreclosure of a lien debt not later than four years after the day the cause of action accrues.

(b) A sale of real property under a power of sale in a mortgage or deed of trust that secures a lien debt must be made not later than four years after the day the cause of action accrues.

(c) The running of the statute of limitations is not suspended against a bona fide purchaser for value, a lienholder, or a lessee who has no notice or knowledge of the suspension of the limitations period and who acquires an interest in the property when an outstanding lien debt is more than four years past due, except as provided by:

(1) Section 16.062, providing for suspension in the event of death; or

19

barred by limitations, so is the mortgage, a mere incident of the debt. If limitations has not run on debt, without reference to tolling or debt extension, then limitations has not run on the mortgage. Here, the applicable limitations period on the debt is that fixed by federal law at six years. We conclude that, absent special circumstances, it is not consistent with the manifest scheme of the Texas law to void the lien when the stated limitations years on the debt have not elapsed. To do so would be contrary to the general rule that the mortgage follows the debt and would pervert the purpose of the Texas law, which seeks to harmonize the limitations period applicable to both the note and the security. Moreover, such a result would discriminate against the federal law by not allowing the holder of a note as to which the applicable federal limitations years had not passed the same privileges as the holder of a note as to which the applicable state limitations years had not elapsed.

---

(2) Section 16.036, providing for recorded extensions of lien debts.

(d) On the expiration of the four-year limitations period, it is conclusively presumed that a lien debt has been paid and the lien debt and a power of sale to enforce the lien become void at that time."

Section 16.036 provides in part that "parties primarily liable for a lien debt . . . may suspend the running of the four-year limitations period for lien debts through a written extension agreement" to be "signed and acknowledged as provided by law for a deed" and recorded in the real estate records "of the county where the real property is located."
Section 16.037 provides: "An extension agreement is void as to a bona fide purchaser for value, a lienholder, or a lessee who deals with real property affected by a lien debt without actual notice of the agreement and before the agreement is acknowledged, filed, and recorded."

20

To be sure, Texas law strives to protect from secret tollings or extensions the unknowing bona fide purchaser who acquires the land when the limitations period on the debt has facially expired. Section 16.035(c); 16.037 (*see* note 8, *supra*). However, as between the parties, and those holding under them in subordination to the mortgage, informal, unrecorded extensions of the debt, not meeting the standards of section 16.036 (*see* note 8, *supra*), suffice also to extend the lien. *See, e.g., Jolly, supra* at 541 (predecessor to section 16.035(c) "not intended . . . to have application where an unbarred lien is extended by the parties to it, and no other persons are affected by the extension, except those holding under voluntary conveyance from the mortgagor in subordination to the lien"; and not intended to change "rule . . . long established . . . that the lien by which a debt is secured is incident to the debt; and that a written extension of the maturity date of the debt, by the debtor, operates as an extension of lien also, unless the extension agreement shows otherwise"); *T.A. Hill State Bank of Weimar v. Schindler*, 33 S.W.2d 833, 837 (Tex. Civ. App.SQGalveston 1930, writ ref'd) (predecessor to section 16.035 did not change prior settled law "that any renewal of the note made before it became barred which was valid as between the parties preserved the lien until the expiration of four years after the maturity of the debt fixed by the renewal, except as against subsequent innocent purchasers and lienholders"); *Mercer v. Daoran Corp.*, 676 S.W.2d 580, 581-82 (Tex. 1984) (one who becomes junior lienholder before senior lien debt is facially barred is not protected by section 16.035's predecessor from subsequent unrecorded extension of senior

21

debt). Similarly, as between the parties, an informal, unrecorded, and unacknowledged written promise to pay a limitations barred debt is held to revive both the debt and the lien securing it. *Beeler v. Harbour*, 116 S.W.2d 927, 930-931 (Tex. Civ. App.SQFort Worth 1938, writ ref'd). *See also Falwell*.[9]

Here, when the FDIC was appointed receiver in June 1987, four years had not elapsed since the note's original maturity date. Consequently, at that time the note and lien were each fully in force. The appointment of the FDIC as receiver brought into play section 2415(a), the federal six-year statute of limitations. As a result, the debt would not become barred before 1990. For purposes of its effect on Texas limitations law as applied to the validity of the lien, it seems to us that this would be treated at least as favorably to the validity of the lien as if the parties had previously, by unrecorded instrument, extended the note's maturity, so it would not be barred before 1990. On August 9, 1989, when FIRREA came into effect, no innocent, ignorant third party purchaser for value had (or had had) any interest in the property. In those circumstances, and as the debt was not barred, the FDIC receiver could then have foreclosed its lien consistent with Texas law. FIRREA then took over, and its limitations period,

---

[9] In *Falwell*, the payee filed suit in February 1885 on a March 1878 note of Abercrombie's maturing November 1, 1880, and to foreclose the implied vendor's lien securing it; limitations did not bar the note because Abercrombie had been out of the state continuously since a time prior to November 1880; on November 2, 1878, Abercrombie had conveyed to Falwell the land deeded Abercrombie by the payee in March 1878. Falwell then knew of the payee's lien. It was held that the lien was properly foreclosed as to Falwell. "The lien was incident to the claim for the purchase money. If the note was not barred the lien was not."

22

which did not expire before June 1993, directly applied, unlike that of section 2415(a), not only to claims on the note but also to foreclosure claims (*see* note 2, *supra*).[10]  As the lien was foreclosable on FIRREA's effective date, application of FIRREA would not revive a void or barred lien.  When Davidson, the only bona fide purchaser involved, first acquired an interest in the property in March 1990, limitations concerning the lien was governed by FIRREA, and had not expired.

Consistent with the general principle in Texas that a mortgage survives so long as the debt, provided the rights of innocent, ignorant third-party purchasers for value are not prejudiced, the FDIC in this case was not barred from exercising the power of sale contained in the deed of trust on or before the effective date of FIRREA.  That being the case, the foreclosure was timely under the limitations provisions of FIRREA, found in 12 U.S.C. § 1814(d)(14)(A)(i).

### Conclusion

For the foregoing reasons, the judgment of the district court is

---

[10]  We recognize that this is a nonjudicial foreclosure, but nothing in the Texas statutes treats such a foreclosure differently for limitations purposes from a judicial foreclosure. *See* note 8, *supra*.  We are aware of no Texas authority holding that a nonjudicial foreclosure is limitations barred where neither the debt nor a judicial foreclosure action is so barred. Moreover, Texas law considers a nonjudicial sale under a deed of trust "equivalent to a strict foreclosure by a court of equity." *First Federal Savings and Loan Ass'n v. Sharp*, 347 S.W.2d 337, 340 (Tex. Civ. App.SQDallas 1961), *aff'd* 359 S.W.2d 902 (Tex. 1961).  Of course, we do not here deal with a situation in which it is contended that the express terms of the instrument were transgressed by the nonjudicial sale.  We are concerned only with the effect of the general limitations statutes.

AFFIRMED.