**PAGO PETROLEUM PRODUCTS, INC., Plaintiff**

v.

**YE AHN MOOLSOAN, LTD., dba POLYNESIAN TRADING
COMPANY and RALPH TUIA, Defendants**

High Court of American Samoa
Trial Division

CA No. 70-93

October 2, 1995

Before RICHMOND, Associate Justice, TAUANU'U, Chief Associate
Judge, and BETHAM, Associate Judge.

Counsel: For Plaintiff, Tate J. Eldridge
 For Defendant Ralph Tuia, William H. Reardon

### BACKGROUND

At issue in this case is the question of who will pay the bill for products
purchased from plaintiff Pago Petroleum Products, Inc. ("PPP") by
defendant Ye Ahn Moolsoan, Ltd. ("YAM").

The following facts are undisputed. Defendant Ralph Tuia ("Tuia") and
YAM, represented by Kyu Won Kim ("Kim"), formulated together some
type of unincorporated business association, known as Polynesian
Trading Company ("PTC"). PTC encountered various business

34

difficulties, and eventually folded.[1] As the business was experiencing problems, Kim left American Samoa and has not been present in the Territory since September 1991. One of PTC's remaining debts was owed to PPP. Because of this debt, Tuia signed a promissory note and a personal guaranty on that note.[2]

The promissory note in question, signed September 6, 1991, states that the principal sum owed PPP is $102,982.60, plus accrued and unpaid interest and attorneys fees and costs, for a total of $115,409.67. This money was to be paid in four installments, with the first payment of $45,000.00 due September 6, 1991, and the second payment of $5,000.00 due September 18, 1991. The due dates of the third and fourth payments, of $32,704.84 each, depended upon the return to Pago Pago port of two longliners belonging to YAM. These boats, the Han Gil No. 12 and the Han Gil No. 1, were scheduled to arrive in port after what was hoped would be profitable fishing voyages.[3]

PPP now asserts that Tuia has defaulted on the debt. Although Tuia initially claimed that he had paid PPP $50,000.00--the sum of the first two installments--at trial, he apparently accepted PPP's contention that he has paid only $45,000 and has made no effort to pay the second, third or fourth installments.

## DISCUSSION

Tuia does not dispute that he owes PPP the amount of the second installment, $5,000. The dispute between the parties centers around the payment of the third and fourth installments, totalling $65,409.67 plus any accrued interest on the note. Tuia correctly asserts that his payment of the third and fourth installments is subject to a condition precedent, namely, the arrival of the longliners in Pago Pago port. Tuia claims that

---

[1] There is no evidence in the record to indicate that PTC declared bankruptcy or had its debts otherwise discharged. Therefore, the company, although defunct, remains liable for the debts it has incurred.

[2] In his affidavit of June 8, 1994, Tuia admits to executing the proffered promissory note and personal guaranty. There is no dispute over the legitimacy of these documents.

[3] The Han Gil No. 12 was expected back in port on the second week of October, 1991. The Han Gil No. 1 was due to arrive "[i]n approximately five months of its departure date."

this condition never occurred, which PPP does not dispute.[4] Thus, Tuia has a valid argument that the third and fourth installments have not become payable under their literal terms.

PPP, however, contends that, regardless of the occurrence of the conditions precedent, the full balance of the note has become payable under the note's acceleration clause. The acceleration clause reads:

> If default is made in the payment when due of any part of [any] installment or any part of interest, then the entire amount of the indebtedness shall become immediately due and payable at the option of the holder of this note, without notice.

By failing to pay the $5,000 due in the second installment, Tuia defaulted on the note, allowing PPP to invoke the terms of the acceleration clause.

■ Acceleration clauses such as the one at issue in this case are not uncommon, particularly in contracts involving money debts. Tuia has made no argument, and the court can see none, for the invalidity of the acceleration clause in the PTC note. Normally, an acceleration clause creates an option in the creditor whether to demand payment in full upon the debtor's default. *See, e.g., United States v. Rich*, 853 F. Supp. 341, 347 (E.D. Cal. 1994); *Carmichael v. Rice*, 158 P.2d 290 (1945); ARTHUR L. CORBIN, CORBIN ON CONTRACTS § 265. Although the note does not accelerate automatically upon nonpayment, the creditor can exercise its option by taking action. *Rich*, 853 F. Supp. at 347; *Curry v. United States Small Business Admin.*, 679 F. Supp. 966, 970 (N.D. Cal. 1987).

■ In this instance, PPP has exercised its option on the acceleration clause by bringing this suit. The ability to demand payment by bringing suit is limited by the statute of limitations, *cf. Rich*, 853 F. Supp. at 347-48, and must otherwise occur within a reasonable time. *See id.* at 347; *Curry*, 679 F. Supp. at 970. Here, PPP served its complaint within two years of Tuia's default--well within the ten years limitations period, *see*

---

[4] At trial, PPP presented evidence that the Han Gil No. 12 had, in fact, returned to Pago Pago port in February 1995 under the name Dae Hae No. 1, and possibly under new ownership. However, PPP has placed little emphasis on this fact, since it is relying on the argument that the acceleration clause in the promissory note has acted to excuse the conditions precedent. Because we agree with PPP that the acceleration clause excused the occurrence of the conditions precedent, there is little need to consider whether the condition precedent was satisfied by the Han Gil No. 12's return to port under a different name.

A.S.C.A. § 43.0120(5), and an otherwise reasonable time. With the note validly accelerated and full payment demanded, the conditions precedent for the third and fourth payments are no longer required. Tuia has failed to cite any authority to the contrary.

## CONCLUSION

Accordingly, we hold that Tuia is liable for the remaining balance due on the face of the note, in the amount of $70,409.67, and accumulated interest since the date of the note in the amount of $41,328.35 through October 2, 1995.[5] The total amount currently owed on the note is $111,738.02.

 In addition, the terms of the note call for the payment of attorney's fees and court costs in the event that suit is filed to collect. The purpose of attorney fee clauses in security agreements is to make the holder whole in the event he must go to court to enforce his rights. *See, e.g., Motor Dispatch, Inc. v. Buggie*, 379 N.E.2d 543 (Ind. App. 1978). This jurisdiction has recognized that attorney's fees can be validly granted in a written promissory note. *See, e.g., Development Bank of American Samoa v. Lava*, 5 A.S.R.2d 24 (1987). Additionally, court costs are allowed to the prevailing party as of course unless the court otherwise directs. TCRCP 54(d). We find it appropriate to award attorney's fees and court costs in this case, and will do so upon a properly submitted affidavit from plaintiff's counsel.

Post-judgment interest on the total judgment amount, consisting of the principal, pre-judgment interest, attorney's fees and costs, will continue to accrue at 12% *per annum*.

It is so ordered.

---

[5] In documents submitted to this court, plaintiff's counsel has calculated interest using a simple interest formula on the 12% *per annum* amount required by the note. We see no reason to deviate from this formula in determining accumulated interest to date.